[Civ. No. 906.  Third Appellate District.—January 27, 1912.]

CARL A. MITCHELL, Appellant, v. WALTER ELMER BROWN, as Executor of the Last Will of ELIZABETH M. HAFFNER, Deceased, Respondent.

ACTION BY SECOND HUSBAND OF CHILD'S MOTHER AGAINST ESTATE OF ADOPTING PARENT—AGREEMENT FOR COMPENSATION—PRIMA FACIE CASE—IMPROPER NONSUIT.—In an action by the second husband of the mother of a child which had been legally adopted by the deceased, after the mother's divorce from its father, and which had been committed to the care of the mother and such second husband under an agreement for compensation, which action was brought for such compensation upon a rejected claim against the adopting parents' estate, and in which the evidence for the plaintiff was sufficient to make a *prima facie* case for recovery, it was error to grant a nonsuit therein at the close of the plaintiff's evidence.

ID.—EFFECT OF LEGAL ADOPTION—TERMINATION OF PARENTAL OBLIGATIONS—LEGAL CONTRACT WITH PARENTS.—After the legal adoption of a minor child by another person the parental obligations of its natural parents cease to exist, and they are no more legally liable for the maintenance, support and education of such child than would be a perfect stranger. It follows that an adopting parent may contract with the natural parents, or with its mother and her second husband, to take care of, support and educate the child for compensation, as freely and legally as such a contract could be made by the adopting parent with a stranger to the blood of such child.

ID.—EFFECT OF MOTION FOR NONSUIT—LEGAL VIEW OF EVIDENCE.—A motion for a nonsuit at the close of the plaintiff's evidence presents to the decision of the court to which it is addressed a question of law, pure and simple. It should be denied when there is any evidence to sustain plaintiff's case, without passing upon the question of its sufficiency, or as to whether the court believes it or not. Upon such motion, the material facts which the evidence tends to prove must be assumed to be true; and if the evidence is fairly sus-

ceptible of two constructions, the court must take the view most favorable to the plaintiff; and if contradictory evidence has been given, it must be disregarded.

ID.—APPLICATION OF PRINCIPLES OF EVIDENCE TO NONSUIT.—It is held that, applying the principles of evidence to the motion for a nonsuit, the evidence for the plaintiff must be taken as showing that the agreement for compensation was with the plaintiff's husband as well as with his wife, the child's mother; that the care of the adopted child cannot be presumed gratuitous; that an explanation of a payment of $1,100 made to the mother after receiving the adopted child, not connected with compensation therefor, but in consideration of her relinquishment of a claim against a different estate, in which her mother and the adopting parent were interested, must be assumed as true; and that every favorable inference and presumption from the evidence must be taken as true; and that the nonsuit cannot be sustained.

ID.—REVIEW OF ERRORS IN EVIDENCE.—Errors in evidence cannot be reviewed upon an appeal from the judgment involving only the motion for a nonsuit, but may be reviewed upon appeal from an order granting a new trial.

ID.—EVIDENCE OF PAYMENT OF MONEY AFTER CARE OF CHILD ADMISSIBLE ON CROSS-EXAMINATION.—The court properly allowed evidence on the cross-examination of the plaintiff to show that the $1,100 had been received from the adopting parent by the mother after she received the care of the child for the purpose of an inference that it was received in payment therefor, though the answer may show a purpose foreign thereto.

APPEAL from a judgment of the Superior Court of Marin County, entered upon an order granting a nonsuit, and from an order denying a new trial. Thos. J. Lennon, Judge.

The facts are stated in the opinion of the court.

F. J. Castelhun, for Appellant.

Clinton G. Dodge, and J. M. Inman, for Respondent.

HART, J.—On the sixteenth day of December, 1909, the plaintiff presented to the defendant, as the executor of the estate of Elizabeth M. Haffner, deceased, a claim for the sum of $1,200 for the support, maintenance and education of one Alphia W. Mitchell, the minor adopted daughter of the de-

ceased, for the period of four years, from the twentieth day of September, 1905, at the monthly rate of $25.

On the twenty-third day of December, 1909, the defendant rejected said claim, and thereupon the plaintiff instituted this action to recover upon the same.

This appeal is from the judgment entered upon an order granting a nonsuit on the motion of the defendant and from the order denying plaintiff a new trial.

The facts are, briefly, these: Daisy Mitchell was the grand-daughter of the deceased and the mother of Alphia W. Mitchell by her first husband, Walter Mitchell. Daisy Mitchell was divorced from Walter Mitchell and thereafter the former went to the home of the deceased and there lived a considerable portion of the time until the date of her marriage to plaintiff (also Mitchell by name), on the ninth day of September, 1905. On the twenty-eighth day of March, 1905, and subsequently to the entry of the decree granting Daisy Mitchell a divorce from her first husband, the deceased, by legal proceedings, instituted in the Marin county superior court for that purpose, adopted Alphia W. Mitchell, who, at that time, was not quite five years of age, as her own child. The latter remained and lived with deceased until the intermarriage of her natural mother, Daisy Mitchell, with the plaintiff, on the ninth day of September, 1905, at which time she left the home of her adopted mother and took up her residence with her natural mother and the latter's husband. The circumstances under which the last-mentioned event occurred are detailed by Daisy Mitchell as follows:

"At the time of my marriage [to plaintiff] Mrs. Haffner was living in Sausalito. Alphia was there from the time of her adoption up to the time of my marriage; I was there off and on; on the evening when I expected to be married I was packing up my things to ship them to Mill Valley; Mrs. Haffner said she didn't know what she was going to do, she said she felt that she was not in a position to take care of the girl; that she was getting old and was sick and was worried; she wanted me to take her with me; we were married the same evening and came back to the house; Mrs. Haffner, Mr. Mitchell, Alphia and myself were sitting at the supper table; I went in to take my hat; when I came out Mrs. Haffner

wanted to know if I was not going to take Alphia with me; she said, 'I cannot take care of her any more; I am getting old, sick and worried; it is too much trouble for me. You take her. I will make it all right with you.'

"Q. What did she say to Mr. Mitchell, if anything? A. She said for him to take her and be good to her.

"Q. That is the language? A. That is the language. She said 'Take her and be good to her.' She said 'I will fix it all right with you.' The same night we took the child with us to our home and she has been there ever since. I clothed her, sewed for her, did everything that was to be done for a child of her age, sent her to school, bought her books and everything like that."

The testimony of Daisy Mitchell constituted all the evidence that was offered and received on behalf of plaintiff. It was at the conclusion of her testimony that the court granted defendant's motion for a nonsuit.

We think that the order granting the nonsuit was erroneous and that the judgment must, therefore, be reversed.

The legality of the proceedings culminating in the adoption of Alphia Mitchell by the deceased is not questioned here.

The legal effect of the proceedings by which Alphia became the adopted child of the deceased was to disrobe the natural parents of all parental or any authority over the minor. The child, by virtue of those proceedings and the order of the court therein, became, in all respects, legally the child of the deceased (Civ. Code, sec. 227), and from the time of the adoption thenceforward the deceased and the child sustained toward each other the legal relation of parent and child and had all the rights and were subject to all the duties of that relation. (Civ. Code, sec. 228.) Furthermore, the natural parents of the child, from the time of her adoption, were relieved of all parental duties toward, and all responsibility for, the child, and, as before stated, can legally exercise no right over her. (Civ. Code, sec. 229.)

It follows from the foregoing rules of the law of this state that, after the adoption of a minor child by another, the parental obligations of the natural parents to such child cease to exist, and that the former, after such adoption, are no more legally liable for the maintenance, support and educa-

tion of the child than a perfect stranger would be. And it furthermore follows that an adopted parent may contract with the natural parents to take care of, support and educate the adopted child for compensation as freely and legally as such a contract could be made by the adopted parent with a stranger to the blood of such child.

With the law as thus stated in view, we shall proceed to consider whether, under the evidence, the court was justified in making the order granting the nonsuit.

That a motion for a nonsuit presents for the decision of the court to which it is addressed a question of law, pure and simple, is a proposition so well settled in this state that it might well be regarded as a work of supererogation to cite authorities in its support. The proposition is, however, affirmed by many cases, of which the following may be mentioned: *Felton* v. *Millard,* 81 Cal. 540, [21 Pac. 533, 22 Pac. 750] ; *Higgins* v. *Ragsdale,* 83 Cal. 219, [23 Pac. 316] ; *Warren* v. *McGill,* 103 Cal. 153, [37 Pac. 144] ; *Zilmer* v. *Gerichten,* 111 Cal. 73, [43 Pac. 408] ; *Goldstone* v. *Merchants' Ice & Cold St. Co.,* 123 Cal. 625, [56 Pac. 776] ; *Hanley* v. *California etc. Co.,* 127 Cal. 232, [47 L. R. A. 597, 59 Pac. 577] ; *Estate of Arnold,* 147 Cal. 583, [82 Pac. 252] ; *Estate of Welch,* 6 Cal. App. 45, [91 Pac. 336] ; *Archibald's Estate* v. *Matteson,* 5 Cal. App. 441, [90 Pac. 723] ; *Nonrefillable Bottle Co.* v. *Robertson,* 8 Cal. App. 103, [96 Pac. 324] ; *Bush* v. *Wood,* 8 Cal. App. 650, [97 Pac. 709] ; *In re Daly's Estate,* 15 Cal. App. 329, [114 Pac. 787].

In *Goldstone* v. *Merchants' Ice & Cold Storage Co.,* 123 Cal. 625, [56 Pac. 776], it is said: "A nonsuit should be denied where the evidence and the presumptions reasonably arising therefrom are legally sufficient to prove the material allegations of the complaint."

"A nonsuit should be denied," says the court in *Zilmer* v. *Gerichten,* 111 Cal. 73, [43 Pac. 408], "when there is any evidence to sustain plaintiff's case, without passing upon the question as to the sufficiency of such evidence."

In *Hanley* v. *California etc. Co.,* 127 Cal. 232, [47 L. R. A. 597, 59 Pac. 577], the court said: "This rule must be applied to all the evidence submitted by the plaintiff."

In *Bush* v. *Wood,* 8 Cal. App. 650, [97 Pac. 709], the rule is thus stated: "It is clear that it makes no difference, where

the motion for a nonsuit is made on the close of plaintiff's case, whether the court itself believes the testimony or not, for, as is obvious, the material facts which the evidence tends to prove must be assumed to be true for the purpose of the motion, just the same as the material facts alleged in a pleading must be so treated in the consideration of a demurrer to such pleading."

Following the contention of counsel for defendant that, if the evidence showed that the services of which the claim for compensation is predicated were actually performed by the plaintiff, such services were disclosed by said evidence to be purely gratuitous, the court granted the motion for nonsuit upon the ground that the testimony failed to establish either an express or implied contract between the deceased and the plaintiff for the care and support of the child.

But does the evidence, considered, as it must be on such a motion, in a light most favorable to the plaintiff, fail to disclose an agreement? In answering this question, we shall confine ourselves to a consideration of the testimony bearing upon the actual occurrences attending the transaction by which plaintiff took the custody and charge of the child, and will not consider the effect, ordinarily, in legal contemplation, of a request by one to another that the latter perform some service for him without any reference to the matter of compensation for such service.

Mrs. Daisy Mitchell testified and repeatedly declared that Mrs. Haffner said, not only to her but to her husband, the plaintiff herein, "Take her and be good to her," referring to the child; "I will fix it all right with you," or, "I will make it all right with you." She testified that on the very day on which Mrs. Haffner thus addressed them they took the child and for four years from that time they "clothed her, sewed for her, did everything that was to be done for a child of her age, sent her to school, bought her books and everything like that." There is nothing so vague in the language of the deceased, "I will make [or fix] it all right with you," as to make it doubtful as to its meaning. It seems to us that but one meaning can rationally be ascribed to that language, and that is that, if the plaintiff and his wife would take charge of and provide for the child, she (deceased) would reasonably com-

pensate them for the services so rendered. The language is at least capable of that interpretation, and on a motion of this character it is the duty of the court to which such motion is submitted to view the testimony most favorably to the plaintiff, and, therefore, to so construe said language. As is said in the *Estate of Arnold,* 147 Cal. 583, [82 Pac. 252]: ''Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants,'' or, as here, the plaintiff.

But counsel insist that the language of the deceased above quoted was addressed to Mrs. Mitchell and not to the plaintiff. We do not so read the record. On page 18 of the transcript, it appears, as shown, that Mrs. Mitchell was asked the following questions and made the following answers: ''Q. What did she [meaning deceased] say to Mr. Mitchell, if anything? A. She said for him to take her and be good to her. Q. That is the language? A. That is the language. She said: 'Take her and be good to her.' She said, 'I will fix it all right with you.' '' The answers thus returned were to questions specifically directed to the ascertainment of what deceased said to the plaintiff when she requested him to take the child. That witness was thus referring to the language addressed by the deceased to plaintiff on the subject, we think can admit of no room for doubt.

Emphasis is also laid upon the fact, developed on the cross-examination of Mrs. Mitchell, that the deceased gave her the sum of $1,100 after her intermarriage with plaintiff and within the period during which she had the custody of Alphia. But we cannot see that that fact can in any manner or degree support the order granting the nonsuit. Assuming that that circumstance, on the trial on the merits, might properly be regarded as contradictory to the claim declared upon by plaintiff, still, as so viewed, it cannot be considered on a motion for a nonsuit presented on the close of plaintiff's case. ''All the evidence in favor of the contestants [plaintiff] must be taken as true, and *if contradictory evidence has been given, it must be disregarded.''* (*Estate of Arnold,* 147 Cal. 583, [82 Pac. 252].)

Moreover, assuming that the fact was brought out for the purpose of disclosing that the plaintiff and his wife had thus been partly or fully compensated for their services in caring for the little girl, then the natural inference therefrom, which it would be the duty of the court to draw and consider in favor of plaintiff on the motion, is that the deceased recognized the existence of an agreement on her part, whether express or implied is immaterial, to reimburse or compensate either the plaintiff or his wife, or both, for the expenses and services incident to the maintenance, support and education of the child. In this view of the testimony with regard to the $1,100, the case of plaintiff would, obviously, be materially strengthened and would render more apparent the error of the order.

Mrs. Mitchell, however, explained the gift to her of the sum of money named as follows: That, her own mother (daughter of deceased) being dead at the time of the death of Mrs. Haffner's husband, she, after the latter's death, relinquished to deceased all the right to and interest in the estate of her grandfather to which her mother, as heir of the last named, would have been entitled had she been living at the time of the death of her father, and that in consideration of such relinquishment, Mrs. Haffner gave to Mrs. Mitchell the said sum of $1,100. It was, of course, the duty of the court, on the motion, to view the testimony of Mrs. Mitchell on this point most favorably to the plaintiff, and, therefore, to that end to accept as verity, or at least to assume as true, her explanation of the reason or purpose for which that money was given her by the deceased.

Counsel further lay much stress upon the fact, admitted by Mrs. Mitchell, that neither she nor plaintiff ever made any demand on the deceased during her lifetime for compensation for taking care of the child. Undoubtedly that fact, not satisfactorily explained, would be entitled to much consideration and perhaps considerable weight in the determination of the issue upon its merits, but upon a motion for a nonsuit it is entitled to no consideration whatever against the right of the plaintiff to have the cause determined upon its merits.

Nor will it do to argue, in reply to our views of the record as it is presented here, that, it being a natural or moral duty resting on plaintiff's wife to care for the child, the court

was, therefore, justified in inferring from that proposition
that the services of plaintiff in that respect were gratuitous.
There can, of course, be no doubt that the care and mainte-
nance of a minor by its natural parents under any circum-
stances would be a most humane and proper thing to do, and,
where necessary, any parent made of the right sort of ma-
terial would do so, even if the law did not place that duty
upon him. But we are here dealing with legal obligations
and duties. The natural mother of the child, as we have
seen, lost all legal authority over and was relieved from all
legal obligations to maintain and support the child immedi-
ately upon the latter's adoption by the deceased. The rela-
tion of parent and child between Mrs. Mitchell and Alphia
legally ceased to exist, upon the adoption, as completely as
if that relation between them had never existed. As to the
plaintiff himself, the adoption having taken place prior to his
intermarriage with the natural mother of the child, the latter
never, at any time, either subsequently to or (much less) be-
fore the adoption, bore any relation of whatsoever nature
to him. On a trial on the merits of the controversy, in a
case of this character, where the main facts adduced are
irreconcilably contradictory, the fact of the natural, as contra-
distinguished from the legal, duty of a party in the premises
might be entitled to considerable weight, and, indeed, might
throw the scales against the claimant or plaintiff. But on
a motion for a nonsuit, submitted on the close of plaintiff's
case, it is the duty of the court to draw all inferences that
are deducible from the testimony in view of the *legal* obliga-
tions, duties and responsibilities of the parties, and not in
view of what one of the parties ought to and would perhaps
naturally do under certain circumstances.

If the case had been submitted on the merits of the issue
upon the testimony presented by the plaintiff, we doubt not,
judging from the ruling on the motion, that the court would
have rendered judgment for the defendant, in which case it
is very probable that the action of the court would stand
immune from disturbance on appeal, so far as the evidence
was concerned. And we may with propriety suggest here
that, if counsel for the defendant had rested their case on
the testimony of plaintiff prior to the presentation of their
motion for a nonsuit, a much different proposition might,

perhaps, be submitted here for review. (*Estate of Morey*, 147 Cal. 507, [82 Pac. 57].) It is said in that case: "But with regard to the granting of a motion for nonsuit made at the close of the evidence for plaintiff and defendant, the rule seems to be well established that the trial court has discretion, and that it is not error to grant the motion where, *upon all the evidence*, it is clear that if the jury should bring in a verdict against the defendant it would be the duty of the court to set it aside and order a new trial," citing a number of cases. Of course, the rule as thus stated does not mean that the motion, if made after both parties rest their case, should be granted in every case where the trial court might grant a new trial for insufficiency of evidence for plaintiff, but only that the court may do so in very clear cases.

But, on a motion for a nonsuit on the close of plaintiff's case, the court is compelled to assume the truth of all the testimony produced by plaintiff. The question of the credibility of witnesses or the weight of evidence cannot under such circumstances arise. In fine, as we have in effect already pointed out, the line of distinction between the power of the court when considering the evidence on a motion for a nonsuit on the close of plaintiff's case and the power vested in it when considering the evidence upon the merits is that, in the former case, a pure question of law is submitted for the court's decision, and there is therefore no discretion in the court to pass upon the credibility of the witnesses for plaintiff or the probative value of the testimony produced by plaintiff; while, in the latter case, a question of fact is submitted to the court, it then being called upon to determine whether the issue has been established by the proofs, and the court, like a jury where the issues of fact are so tried, may then weigh the testimony and to that end pass upon the credibility of the witnesses and, finally, conclusively determine the truth as to the ultimate fact.

The defendant in this action did not rest his case on the close of plaintiff's case, but, upon the conclusion of the adduction of evidence by the plaintiff, made a motion for a nonsuit. Upon this motion, under such circumstances, it was therefore, as we have shown, imperatively incumbent on the court to view plaintiff's testimony in the light of a truthful narration of the facts, considering, indeed, as facts proved,

"every favorable inference deducible, and every favorable presumption arising, from the evidence so produced," and to disregard all contradictory evidence or facts inconsistent with plaintiff's evidence or with the theory of his case.

Under the evidence upon which the motion was submitted and granted, viewed by the light of the rules governing the consideration and disposition of motions for nonsuit on the close of the case for plaintiff, we can see no possible escape from the conclusion that the court erred in its ruling on the motion in this case.

As we have seen, the defendant has also appealed from an order denying his motion for a new trial. The basis of the motion was an alleged error of the court in the admission of certain testimony. It is thoroughly settled that errors in the rulings of the court admitting or rejecting evidence may not be considered or reviewed on a motion for a nonsuit. But, as the case is to be retried and the order appealed from should be disposed of, we will express our views as to the propriety of the testimony thus complained of.

The order appealed from is objected to on the ground that the court committed prejudicial error in allowing, over objection by counsel for plaintiff, Mrs. Mitchell to be asked and answer the question, on her cross-examination, whether, after she took charge of the child, Mrs. Haffner had given her any money. The answer brought the reply that the deceased had given her the sum of $1,100, to which reference has hitherto been made. The argument is that, since the action is by the husband of Mrs. Mitchell for services alleged to have been performed by him, it was immaterial whether the witness had been given or paid any money by Mrs. Haffner. The specific purpose for the disclosure by the defendant of the gift or payment of the sum of $1,100 by Mrs. Haffner seems to have been to show that a payment had been made "on this claim," and for that purpose the question and the testimony elicited thereby were perfectly proper. It would manifestly be immaterial, so far as the question of the propriety of such testimony is affected, whether the money was paid to Mrs. Mitchell or her husband if, in point of fact, the purpose for which the money was so paid or given was to compensate the plaintiff and his wife for their services in taking care of the child. And it is equally manifest that the defendant had

the right to inquire into that transaction for the purpose suggested, although the answer might, as it did, indicate that it was given for a different purpose or a purpose altogether foreign to the arrangement for the care of the child.

For the reasons herewith given, the judgment entered upon the order granting the nonsuit is reversed and the order denying plaintiff's motion for a new trial is affirmed.

Chipman, P. J., and Burnett, J., concurred.