[Civ. No. 3545. Second Appellate District, Division Two.—July 21, 1921.]

# J. EDGAR ROSS, Appellant, v. R. W. TABOR, Respondent.

[1] NONSUIT—EVIDENCE—INFERENCES.—On a motion for nonsuit, not only must all the evidence in favor of the plaintiff be taken as true, and contradictory evidence, if any, be disregarded, but if the evidence will reasonably permit of two or more inferences, those inferences only which are most favorable to the plaintiff must be adopted by the court.

[2] CONTRACT—CARE AND COLONIZATION OF BEES—CONDUCT OF DEFENDANT—JUSTIFICATION OF BELIEF OF WITHDRAWAL—QUESTION FOR JURY.—In this action for damages for breach of a contract by the terms of which defendant was for three years to take care of bees furnished by plaintiff and to make therefrom additional colonies each year, the plaintiff to furnish a house and an automobile and the parties to share the honey and wax, the question whether under the evidence the plaintiff was justified in believing that defendant had withdrawn from the contract was one for the jury.

[3] ID.—AUTOMOBILE FOR USE IN WORK—APPLIANCE—CONSTRUCTION OF CONTRACT.—An automobile furnished for use under such a contract is an "appliance" within the meaning of the clause imposing upon the defendant the duty of keeping all tools and appliances in good repair at his own expense.

[4] ID.—TAKING OF POSSESSION UPON ABANDONMENT—DAMAGES FOR FAILURE TO COLONIZE—RIGHT OF RECOVERY.—The right of the plaintiff under such a contract to recover damages for the breach of the provision as to the colonization of the bees is not affected by the fact that he took possession of the automobile and assumed the sole care of the bees, if the defendant was the first to breach the contract.

[5] ID.—STATUTE OF LIMITATIONS.—Where such contract was not mutually abandoned and there was no rescission by the plaintiff, the four-year period of limitation did not commence to run as to the right of recovery for breach of the part of the contract as to the colonization of bees until the end of the first year.

[6] ID.—ABANDONMENT OF CONTRACT—MIXED QUESTION OF LAW AND FACT.—The question as to whether a contract has been abandoned is a mixed one of law and fact, and although the parties may abandon it by matter *in pais*, the acts and conduct relied on must be clearly proved, and they must be positive, unequivocal, and inconsistent with the existence of the contract.

[7] Nonsuit—Statement of Grounds.—A motion for a nonsuit should specify the grounds upon which it is made, and a ground which is not stated cannot be considered on appeal.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Emmet H. Wilson for Appellant.

Hickcox, Crenshaw & Trude for Respondent.

FINLAYSON, P. J.—This is an action to recover damages for the alleged breach of a contract. At the trial defendant's motion for a nonsuit was granted and a judgment of nonsuit entered. From that judgment plaintiff appeals.

The evidence introduced by plaintiff discloses the following: By the terms of their contract, which was in writing and executed December 26, 1914, plaintiff agreed to furnish five hundred or more colonies of bees, which defendant agreed to care for in a workmanlike manner for a period of three years from the date of the agreement. Defendant further agreed to make from the bees thus to be furnished by plaintiff five hundred additional colonies during the year 1915, one thousand additional colonies during the year 1916, and during the year 1917, a number sufficient to bring the total to two thousand colonies on the expiration of the three-year term of the contract. The contract further provided that plaintiff would furnish defendant with a tent-house, or other suitable dwelling place, free of rent; and that he likewise would furnish defendant with an automobile to be used by the latter in his work of caring for the different colonies of bees, which, it seems, were scattered over a number of locations covering a wide area in the Imperial Valley. Plaintiff also agreed to furnish defendant with an extracting outfit with which to extract the honey and wax. Defendant, among other things, agreed to keep all tools and "appliances" in good repair, at his own expense, and, during the term of the contract, not to engage in any occupation or vocation other than the care of plaintiff's bees, without the latter's consent. The contract provided that plaintiff and defendant should receive, respec-

tively, sixty and forty per cent of all the honey and wax produced by the bees during the three years that the contract was to run.

Immediately after the execution of the contract defendant took charge of the bees. Plaintiff furnished him with a house to live in and likewise with an automobile, as he had agreed. Indeed, plaintiff furnished defendant with everything that he had agreed to supply, excepting only the extracting outfit, which, it was testified, would not become necessary until the following June or July. Defendant's counsel expressly stipulated that no question was raised on the failure to supply the extracting outfit prior to the time when its use would become necessary in June or July of 1915.

In the latter part of March or the first of April, 1915, defendant moved into the house that plaintiff had provided for his use during the three-year term of the contract. On May 15th following, defendant left the house and moved off of plaintiff's land into a house about an eighth of a mile away. On the same day, after using it for the removal of his personal effects, defendant took the automobile that plaintiff had supplied him for the care of the bees back to the house that plaintiff had supplied for his use and left it there.

Some time between the 25th and 30th of May, 1915, plaintiff called at the house that he had provided for defendant's use and found it vacant. He also found the automobile standing in the yard without any oil or gasoline in it, exposed to the heat of the sun and the elements. From these circumstances plaintiff seems to have assumed that defendant had abandoned his contract. Thereupon plaintiff removed the automobile to his own home, some distance away, and took possession of the colonies of bees, thereafter caring for them himself.

Called as a witness by plaintiff under section 2055 of the Code of Civil Procedure, defendant testified that he quit taking care of the bees when plaintiff removed the machine to his own home; that when he found the machine was gone he walked to Brawley; that he was told that plaintiff had the machine; that he went to plaintiff's house and saw the machine in his yard; that he did not see plaintiff and did not go on his premises at all; that he turned around

and went back; that he did not make any inquiry where plaintiff was, because he was told that plaintiff had said that he, defendant, "had skipped out of the valley"; that he did not explain to plaintiff that he "had not skipped out"; that after that he saw plaintiff several times passing the house where he was then staying, about an eighth of a mile south of plaintiff's ranch; that plaintiff never stopped, and that he, defendant, never talked to him; that he never went to see plaintiff to ascertain whether the latter had taken the machine; that he never made any effort to find plaintiff or to have a talk with him to ascertain whether he took the machine or to explain that he, defendant, had not run away.

Plaintiff testified that some time between the 25th and 30th of May he went to the ranch where defendant had been living in the house that he had supplied for defendant's use; that he went to the ranch intending to irrigate, and found the car standing beside the house, which was empty; that he took the car home; that the car was in good condition, but that there was neither gasoline nor lubricating oil in it; that he tried to start it but could not; that an automobile man who was with him supplied him with oil and gasoline, and that he then drove home with the car; that this occurred at about 8 or 9 o'clock in the morning; that he was at the ranch between an hour and two hours before he went away with the machine; that there was nothing in the house abandoned by defendant except a desk which the latter had made while he was living on plaintiff's place in Brawley; that he never thereafter saw defendant until late in the fall, and that defendant did not do any work thereafter under the contract.

Defendant's answer, in addition to denying a breach of the contract on his part, pleaded the statute of limitations, alleging that plaintiff's cause of action is barred by subdivision 1 of section 337 of the Code of Civil Procedure, whereby it is provided that "an action upon any contract, obligation or liability founded upon an instrument in writing executed within this state" must be commenced within four years after the accrual of the cause of action.

At the close of plaintiff's evidence defendant moved for a nonsuit upon two grounds: 1. That the evidence did not show any breach of the contract on defendant's part, but

did show that it had been breached by plaintiff, and that that was the reason why defendant ceased work. 2. That the cause of action, if any, is barred by the above-mentioned code section.

[1] It may be that had the case, upon the close of appellant's evidence, been submitted to the trial court for a decision on the merits, the evidence would have warranted a decision on the facts in respondent's favor. In that case the court would have been called upon to decide questions of fact only, and would have been free to deduce from all the evidence any reasonable inferences, whether favorable or unfavorable to appellant, and regardless of whether opposing inferences might reasonably have been drawn from all the evidence. By moving for a nonsuit, however, respondent presented to the court a pure question of law. It is too well established to require the citation of authority that, on such a motion, not only must all the evidence in favor of the plaintiff be taken as true, and contradictory evidence, if any there be, be disregarded, but if the evidence will reasonably permit of two or more inferences, those inferences only which are most favorable to the plaintiff must be adopted by the court. If any authority were needed to support this well-established principle, reference might be made to *Mitchell* v. *Brown,* 18 Cal. App. 117, [122 Pac. 426], and the long list of cases there cited. In view of the rule that thus requires the court, on a motion for a nonsuit, to resolve all reasonable inferences in favor of the plaintiff, we think that it was error to grant the motion and that the judgment, therefore, must be reversed.

[2] Coming now to a consideration of the evidence and the inferences favorable to appellant that are reasonably deducible therefrom: Unless the removal of the automobile by appellant warranted an abandonment of the contract by respondent, the latter breached the contract. For it is admitted that at no time since appellant took the automobile in the latter part of May, 1915, has respondent done anything under his contract. He did not make from the five hundred colonies of bees furnished him by appellant an additional five hundred in 1915, or an additional one thousand in 1916, or, in 1917, a number sufficient to bring the total to two thousand colonies at the termination of the three years during which he was to work for appellant

in the care of the bees. So that the pivotal question in the case is: Was respondent justified in abandoning the contract merely because appellant removed the automobile to his own home for suitable care upon discovering that the house which he had furnished for respondent's use was vacated and abandoned and that his automobile, without lubricating oil or gasoline, had been left standing in the intense heat and burning sun of Imperial Valley, apparently abandoned to the destructive effects of the elements? To properly answer this question we should give consideration to respondent's conduct shortly prior to the time when appellant so removed the automobile to his own home. That is, we must consider appellant's conduct in the light of respondent's previous conduct in moving off of appellant's land and in deserting the machine that appellant had furnished for his use. The inferences that might be drawn from respondent's conduct in thus moving away from the house that had been furnished for his use and in leaving the automobile neglected and exposed to the destructive effects of the sun and heat are such that reasonable men might differ in their judgments thereon. This being so, there was presented, not a question of law such as arises on a motion for nonsuit, but a question of fact—such a question of fact as would have required its submission to the jury had the case been tried before a jury. From respondent's conduct during the interval of five or ten days intermediate his removal from the house that had been supplied for his use by appellant and the day when the latter found the deserted automobile and took it to his own home for safekeeping, a reasonable man might well infer that respondent intended to abandon, and that he had abandoned, his contract, and that appellant honestly believed that respondent's conduct evidenced a determination on his part to withdraw from the contract. Particularly might this inference be warranted if respondent's conduct at that time be considered in the light of his subsequent studied evasion of appellant at all times after the latter retook the abandoned machine.

If, in consequence of his own conduct immediately prior to the appellant's retaking of the automobile for suitable protection, respondent believed that appellant was acting in the honest belief that he, respondent, had withdrawn from

the contract, then, if he did intend going on with the contract, good faith required that he should have so informed appellant. Having failed to do so, and having permitted appellant to act on the belief that he had withdrawn from his contractual obligations, respondent cannot be permitted to claim that he was ready to perform or that the contract was mutually rescinded or that he was justified in abandoning it by reason of appellant's conduct. "If one party to an executory contract induces the other to believe that he has withdrawn from the contract, the other contracting party need not wait until the day of performance before making new arrangements, nor does he lose his remedy against the delinquent party by providing at once against losses likely to arise from such delinquency." (*Chamber of Commerce* v. *Sollitt,* 43 Ill. 523. See, also, subd. 3, sec. 1511, Civ. Code.)

[3] The written contract specifically imposes upon respondent the duty "to keep all tools and *appliances* in good repair at his own expense." The word "appliances" is very broad and includes anything that is used as a means to an end. (*Cook* v. *Big Muddy-Carterville Min. Co.,* 249 Ill. 41, [94 N. E. 90].) The automobile furnished by appellant for respondent's use was an "appliance," within the meaning of the contract. It was a thing supplied by appellant to be used by respondent as a means of caring for the bees while traveling from location to location. It is not an unreasonable inference that, by leaving the automobile on the abandoned premises, exposed to the burning sun, respondent thereby failed to keep that "appliance" in good repair pursuant to the requirements of his agreement, thereby breaching his contract. Furthermore, by his contract respondent agreed "not to engage in any occupation or vocation other than the care of said bees without the consent of the said J. Edgar Ross." The condition in which appellant found the abandoned premises that he had furnished for respondent to live in while caring for the bees might well justify the inference that respondent, if he had not moved away to take up some other occupation or vocation, was at least not caring for the bees "in a workmanlike manner and to the best of his ability," as required by the terms of his contract, thus breaching the contract in a vital and important particular. In short, the inference that respondent was

the first to breach the contract is not an unreasonable inference, but one which reasonable men might be warranted in deducing from all the evidence in the case.

[4] If respondent was the first to breach the contract, then he is liable in this action for damages even if, after such breach by him, appellant did take the automobile to his own home and assume the sole care of the bees. The fact that appellant removed the automobile from the premises that respondent had abandoned and placed it where it would not be subjected to the destructive effects of the sun's rays, and the further fact that appellant cared for the bees that respondent seemingly had abandoned, instead of depriving appellant of all claim for damages, might justly be regarded as an effort on his part to reduce the damages sustained by him. Nor was it incumbent upon appellant to hunt up respondent and offer to return to him the automobile, or ask him to go back to the house that he had supplied for respondent's use. The contract was a continuing executory contract, requiring of respondent continuous service over a three-year period. And if, as might be inferred from his conduct in leaving the house and the automobile, respondent had abandoned his contract, thereby breaching it, appellant was under no obligation to demand that respondent continue to perform his contract. Respondent cannot escape liability because appellant did nothing other than to take steps to prevent a further loss and an increase of damages. The rule is that a party to a contract cannot take advantage of his own omission to observe the requirements of his contract. If he breaches the contract he cannot interpose the breach as a defense to an action on the contract. "The rule is general that the right to rescind a contract rests wholly with the party who is without default. One cannot violate the contract himself and then seek a rescission on the ground that the other party has followed his example." (*State* v. *McCauley,* 15 Cal. 458. See, also, *California Sugar etc. Agency* v. *Penoyar,* 167 Cal. 274, 280, [139 Pac. 671].) For these reasons we are satisfied that the evidence afforded no basis for the first ground of the motion for a nonsuit.

[5] Nor was the court justified in granting the motion on the second ground, namely, that the action was barred by subdivision 1 of section 337 of the Code of Civil Pro-

cedure. The action was commenced within four years after the time within which respondent was to make the first of the additional colonies of bees; that is, it was commenced within four years after December 25, 1915.

Appellant, if he and respondent did not mutually abandon the contract, could wait until the time arrived for a complete performance of the contract on respondent's part and then bring an action thereon for damages. (*McCurry* v. *Purgason*, 170 N. C. 463, [Ann. Cas. 1918A, 907, 87 S. E. 244]; *Ga Nun* v. *Palmer*, 202 N. Y. 483, [36 L. R. A. (N. S.) 922, 96 N. E. 99].) As we have stated, the contract was a continuing, executory contract. Respondent, when he ceased caring for the bees, did not breach the contract in its entirety. It still had more than two and a half years to run, during which respondent was to render services in caring for the bees. At any time during that period, if appellant did not elect to rescind or abandon the contract, respondent might have returned and resumed his work. Appellant is suing to recover, not for injury done to his bees by reason of neglect in their care, but for damage resulting from respondent's failure to perform that part of his contract whereby he obligated himself to make from the original colonies of bees furnished by appellant five hundred additional colonies by the end of the first year of the contract, i. e., on or before December 25, 1915; one thousand additional colonies by the end of the second year, and by the end of the third year a number sufficient to bring the total to two thousand colonies. Though the contract was partially executed, the breach here complained of resulted from a failure to perform the *unexecuted* parts of the contract, and the case, therefore, comes squarely within the doctrine as announced by the New York court of appeals in *Ga Nun* v. *Palmer, supra,* where it is said: "It is quite true that there is a distinction made in the authorities with reference to contracts which still are wholly executory, and are to be performed in the future; but the distinction pertains to that which would constitute a breach of such contracts. Where the contract is wholly executory, there must be some express and absolute refusal to perform or some voluntary act on the part of the individual which renders it impossible for him to perform, in order to constitute an anticipatory breach for which an action will lie;

whereas, by a partially executed contract, the breach may result from a failure to perform some of the provisions of the contract. But in either case, after a breach by one party, the rights of the other party and his remedies are the same as to the *unexecuted* provisions of the contract." (Italics ours.)

There is an abundance of authority for the position that appellant, if he did not elect to abandon or rescind the contract when respondent ceased caring for the bees, could wait until the expiration of the time when respondent was to complete his contract and then bring his action, meanwhile holding the contract as prospectively binding for the exercise of his· right to bring suit at the end of the term of service contemplated by the contract. Thus in *Hochster* v. *De la Tour*, 2 El. & Bl. 678, the defendant, on April 12th, had agreed to employ the plaintiff in the capacity of a courier for a period of three months from the first day of June. But subsequently, and before the first day of June, the defendant gave the plaintiff notice that he would not require his services. Lord Campbell, after discussing the authorities, states, as a part of his conclusions, the following: "The man who wrongfully renounces a contract into which he had deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured; and it seems reasonable to allow an option to the injured party, either to sue immediately or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer." And in *Ga Nun* v. *Palmer, supra,* the court says: ". . . the general rule is that a right of action does not accrue upon a contract until it is executed, or payment thereunder becomes due by its terms, and the statute of limitations does not commence to run until that event happens. The right to bring an action previous to that event is exceptional, and is only permitted in cases of a breach of a contract by one of the parties which permits the aggrieved party, *at his option,* to maintain an action for such breach, and recover the damages he has suffered on account thereof." (Italics ours.) (See, also, 13 C. J., p. 653.)

There never was any attempt formally to rescind the contract in this case, and it only remains to consider whether the testimony definitely showed a mutual abandonment, evidenced by the conduct of both parties. For if appellant did not elect to rescind or to abandon the contract when he discovered that respondent apparently had ceased to do the things required of him by his agreement, then, as we have seen, his cause of action accrued on the expiration of the time provided by the contract within which respondent was to make the additional colonies of bees, i. e., on the expiration of the three-year term of the contract, which was less than four years prior to the commencement of this action, and, consequently, within the period prescribed by the statute of limitations. Meanwhile appellant could hold on to the contract as prospectively binding on both parties for the exercise of his optional right to bring his action at the expiration of the time within which complete performance by respondent became due by the terms of his agreement.

Does the evidence necessitate the conclusion that there was a mutual abandonment of the contract more than four years before the action was commenced? **[6]** As to whether a contract has been abandoned presents a mixed question of law and fact. (*McCurry* v. *Purgason, supra.*) And though the parties to a contract may abandon it by matter *in pais,* still the acts and conduct which may be relied on to constitute the abandonment must ''be clearly proved, and they must be positive, unequivocal and inconsistent with the existence of a contract.'' (*May* v. *Getty,* 140 N. C. 310, [53 S. E. 75].) There is no unequivocal evidence of any abandonment of the contract on the part of appellant. His conduct in removing the automobile for safekeeping and in caring for his bees after respondent apparently had deserted the house and the automobile furnished for his use is not so unequivocal that it necessarily evidences an intention on appellant's part to relinquish all rights under the contract. In order to hold on to the contract as prospectively binding upon both parties, so that a right of action for damages might accrue to him on the expiration of the time for complete performance by respondent, it was not necessary that appellant should permit his property—his automobile and

his bees—to continue abandoned and deprived of all suitable care.

For the foregoing reasons we are satisfied that the nonsuit was not warranted by the second ground upon which the motion was made.

[7] Respondent claims that the evidence introduced by appellant to prove his damages was wholly insufficient for that purpose. This was not specified as one of the grounds of the motion for a nonsuit, and, therefore, it may not now be urged in an effort to uphold the judgment. It is the settled doctrine that a motion for a nonsuit should specify the grounds upon which it is made, and the general rule is that a ground which is not stated cannot be considered.

The judgment is reversed.

Works, J., and Myers, J., *pro tem.,* concurred.