## PECK v. STAFFORD FLOUR MILLS CO.

(Circuit Court of Appeals, Eighth Circuit.  April 13, 1923.)

### No. 6165.

1. **Contracts** ⊛⇒10(1)—**Option to cancel, given one party, to render contract unilateral, must be independent of any action by the other party.**

   An option of one party to cancel a contract, which will render the contract invalid for want of mutuality, must be an option dependent on the will of that party alone, and not dependent on action or inaction by the other party.

2. **Contracts** ⊛⇒10(4)—**Contract held not void for lack of mutuality.**

   A contract for sale of merchandise *held* not void for lack of mutuality because of a provision giving the seller the option to cancel if any past-due bill against the buyer should remain unpaid.

3. **Contracts** ⊛⇒10(4)—**Provisions excusing performance in case of emergencies do not destroy mutuality of contract.**

   Stipulations in a contract of sale excusing performance in case of emergencies do not destroy its mutuality.

4. **Contracts** ⊛⇒238(2)—**Written contract, though otherwise provided therein, may be changed by oral agreement.**

   A written contract may be changed by a later oral agreement, even though it provides that no change or modification may be made, except in writing signed by the parties.

5. **Evidence** ⊛⇒596(3)—**Of oral agreement changing written contract must be clear and convincing.**

   Evidence of an oral agreement to change or abandon a written contract must be clear and convincing.

6. **Trial** ⊛⇒143—**Court should direct verdict, where evidence would not sustain verdict for other party.**

   It is the rule of the federal courts that a verdict should be directed where the evidence, though conflicting, is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action at law by the Stafford Flour Mills Company against Ike Peck.  Judgment for plaintiff, and defendant brings error.  Affirmed.

Jeptha H. Evans and Charles I. Evans, both of Booneville, Ark., for plaintiff in error.

Ray Campbell, of Wichita, Kan. (J. Graham Campbell, of Wichita, Kan., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and BOOTH and JOHNSON, District Judges.

BOOTH, District Judge.  This is an action brought by defendant in error (plaintiff below) to recover damages for breach of contract. Plaintiff claimed that it had sold flour to defendant, and that he had refused to give instructions and specifications for shipment of the same, as agreed in the contract.  The defense originally set up in the answer was that the contract had been canceled by mutual agreement.  On the trial, defendant was allowed by the court to amend the answer by

⊛⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

setting up as an additional defense that the contract was unilateral. At the close of the evidence the court instructed the jury to return a verdict for plaintiff for the amount demanded in the complaint. There are 23 assignments of error, but those necessary to be considered may be summarized into the following:

(1) That the court erred in not holding that the contract was void for want of mutuality.

(2) That the court erred in directing a verdict for plaintiff for the amount demanded in the complaint, or for any amount.

The contract, so far as here material, provided:

"Date 8—12—20.

"The Stafford Flour Mills Company, of Stafford, Kan., sell[s] and Peck's Economy Store buy[s] the following commodities, subject to the terms and conditions stated herein and printed on the back hereof, which terms and conditions are binding on both parties to this contract, and cannot be modified, except by written consent of both parties, and no verbal conditions, warrants, or modifications are valid:

|                    | Packages. | Brand. | Bbl. |
|--------------------|-----------|--------|------|
| 1000 bbls. flour.......................................98# | Cotton | Bar-None | $11.50 |

"Terms and Conditions.

"Time of shipment, 180 days.

"Destination: Magazine, Ark.

"This contract is subject to confirmation by the seller at

"The Stafford Flour Mills Company,

"By W. Brooks, Seller,

"Ike Peck, Buyer.

"Confirmed by the Stafford Flour Mills Co., by G. W. Kendrick.

"Date 8—16—20.

"The buyer shall furnish to the seller, not less than fourteen (14) days prior to the expiration of the contract period, such specifications and instructions as will permit the seller to ship.

"(1) The seller shall have the option to delay shipment or delivery of or cancel all or any portion of this contract at any time that there remains unpaid to the seller any past-due bill against the buyer, or at any time that the property and or assets of the buyer are in the legal process of liquidation.

"(2) * * * Seller shall not be responsible for failure to ship according to the terms and conditions of this contract, where such failure is caused by any fires, strikes, labor difficulties, failure of carriers to furnish facilities, or other acts of carriers or other causes beyond the control of the seller: Provided that, when such failure does exist, the seller shall perform this contract within a reasonable time, in any event, not to exceed thirty (30) days from the termination of cause or conditions resulting in seller's inability to perform."

[1] The claim of want of mutuality is based upon the clauses numbered (1) and (2) above. As to (1), the argument of defendant runs something as follows: That the evidence shows that defendant was indebted to plaintiff on a former contract, when the present contract was made, and continued to be behind in his payments on the first contract during all the life of the second contract; that this fact made the cancellation of the second contract optional with plaintiff at any time; that the contract, being not binding upon plaintiff, was therefore not binding upon defendant—in other words, was void for want of mutuality.

[2] The argument is ingenious, but not persuasive. We pass by without comment, but without assent, the assumption that the phrase "any past-due bill" includes those due on other contracts than the one

in hand. But an option of one party to cancel, which will render the contract invalid for lack of mutuality, must be an option dependent upon the will of that party only, and not dependent upon action or inaction by the other party. In the case at bar, however, the option of plaintiff to cancel was dependent upon the failure of defendant to keep up his payments. It would be a startling conclusion that defendant, under the clause above quoted, by breaching a former contract, could thereby render the present contract unilateral as to plaintiff, and therefore not binding on the defendant. The maxim a party may not take advantage of his own wrong prevents such a conclusion.

[3] The claim of lack of mutuality by reason of the clause (2) is also without merit. Stipulations in a contract excusing performance in case of emergencies do not destroy its mutuality. 13 Corpus Juris, 337; Klosterman v. United Elec. Co., 101 Md. 29, 60 Atl. 251; Marin Water Co. v. Town of Sausalito, 168 Cal. 587, 599, 143 Pac. 767. Furthermore, in the case at bar, the failure to perform in the contingencies mentioned was not excused entirely, but temporarily only.

[4] The remaining question in the case is whether there was sufficient evidence to go to the jury on the defense of mutual abandonment of the contract. The contract was in writing. The cancellation relied on was an oral one; but it is well settled that a contract in writing may be varied by an oral agreement (Canal Co. v. Ray, 101 U. S. 522, 25 L. Ed. 792; Teal v. Bilby, 123 U. S. 572, 8 Sup. Ct. 239, 31 L. Ed. 263; 13 Corpus Juris, 593; 6 R. C. L. 922), even though the contract provides that no change or modification thereof can be made except in writing signed by the parties (13 Corpus Juris, 594, § 611, and cases cited). And it seems that in Arkansas a contract in writing as required by the statute of frauds may be canceled by oral agreement. Vogler v. Dyer, 149 Ark. 670, 234 S. W. 504.[1]

[5] But the evidence in all such cases must be clear and convincing as to the oral agreement. 6 R. C. L. 922; Ross v. Tabor, 53 Cal. App. 605, 200 Pac. 971. In the present case the evidence as to cancellation consisted mainly of the testimony of the defendant to the effect that on or about January 23, 1921, Mr. Barr, vice president of the plaintiff, came to defendant's place of business in Arkansas to make a collection; that a conversation took place in which defendant related the circumstances under which the contract had been entered into, and told Mr. Barr of the bad condition of the farmers, and how hard collections were, and finally that defendant said, "Mr. Barr, I want to know about that other proposition" (the 1,000-barrel booking), and that Mr. Barr replied, "Now, I will tell you, we will just drop that matter, but, Mr. Peck, if you buy any flour, buy Bar-None flour," and that defendant said, "I promise you upon my word of honor as a man, I will sure buy it."

Barr testified that he called on defendant on Sunday, January 23, 1921, and had a talk with the defendant about collections under a prior contract, and also about ordering out flour under the present contract, but that nothing whatever was said about canceling the contract. After

---

[1] Reported in full in the Southwestern Reporter; reported as a memorandum decision without opinion in 149 Ark.

Mr. Barr returned home, considerable correspondence took place between plaintiff and defendant. January 28th plaintiff wrote defendant that the time of the contract would be extended 10 days, and asked for specifications as to shipments. The same day plaintiff wrote another letter to defendant, that it would help defendant out by shipping one-half the order at the contract price, and one-half at present prices, and asked for an order directing shipment. February 1st defendant wrote:

"I regret very much its impossible for me to send specification just now."

February 3d plaintiff wrote:

"We are in hopes that conditions with you may change, and that you can clean up your old account and also order some of your flour."

February 4th plaintiff wrote:

"We would be glad to have you give us an order for another car, which we can apply one-half the flour at the contract price and one-half at the market price the day of your order."

February 12th plaintiff wrote:

"Please let us have specifications on some of the flour, as the time is about to expire on your contract, and we must have specifications or we will have to cancel this out and charge you with the difference in price."

February 14th defendant wrote:

"Regarding to flour and specification, will state impossible for me to send any just now."

February 14th plaintiff wrote:

"We have to-day extended your contract to March 12th, in compliance with clause O of same."

February 16th plaintiff wrote:

"We have been carrying this booking for you a long time, and are in hopes that you will be in a position soon to order out a portion of it."

February 28th and March 4th plaintiff wrote asking for an order for flour, without mentioning the contract. March 9th defendant wrote:

"As soon as things will begin to move, I will order out flour."

March 11th plaintiff wrote:

"We regret very much that at the present time your collections and business is such that you cannot order out any flour."

Nowhere in this correspondence is there any reference to a cancellation of the contract having been made in January.

On the one hand, plaintiff continues to ask for specifications for shipment, and threatens to cancel the contract if they do not come. On the other hand, defendant gives excuses for not sending specifications, and promises to send as soon as he can. The irresistible conclusion from this correspondence is that there had been no cancellation in January, as defendant claims. Taking all the evidence together bearing upon the matter, it falls far short of being clear and positive that there was a cancellation of the contract; it is conclusive that there was not.

[6] ·The measure of damages· was not disputed. The evidence as to the amount of damages was uncontradicted. The rule in the federal court in this circuit in regard to directing a verdict is that—

"It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the· evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it. And when the trial court has directed a verdict upon conflicting evidence the appellate court may not lawfully reverse it, or the judgment founded upon it, unless, upon a consideration of the evidence, it is convinced that it was not of such a conclusive character that the court below, in the exercise if a sound judicial discretion, should not have sustained a verdict in the opposite direction." Fricke v. Internat. Harvester Co., 247 Fed. 871, 160 C. C. A. 91; Ewert v. Beck, 235 Fed. 513, 149 C. C. A. 59.

In our judgment, the record shows that the case at bar was within the rule. We have examined all the assignments of error. Such of them as are not covered by the foregoing discussion have either been eliminated by the view we have taken of the case, or are without merit.

Judgment affirmed.