## Commonwealth ex rel. v. Sharp

*Leon E. Sperling,* for relator.

*Cadmus Z. Gordon, Jr.,* of *Drinker, Biddle & Reath,* for defendant.

WINNET, J., April 29, 1942.—This is a statutory proceeding against a father for the support of his minor child. The father claims that his liability as the natural parent terminated by the legal adoption of the minor by the maternal grandparents.

Patricia is the daughter of defendant and his former wife, Lucille Eckles. She was born on December 17, 1926. A separation occurred between the parents sometime before 1930 and they were divorced in February of that year.[1] Custody of Patricia went to the grandparents and at no time since 1930 has she lived with defendant.

Late in 1932 Patricia was adopted by her maternal grandparents, Wilson and Myra Eckles. The adoption took place in Lawrence County, Pa. Defendant was requested and gave consent to the adoption which became effective in December 1932. Under the adoption decree Patricia assumed the name of Eckles. Defendant remarried and has two children by that marriage. His

---

[1] At the time of the separation a written agreement was entered into by the parents, the father undertaking to pay $50 per month for the support of the child. Suit on the agreement is pending before Common Pleas Court No. 7 of Philadelphia County, June term, 1941, no. 3168.

former wife was likewise remarried. The adopting father died in August 1934; the adopting mother in 1936. In January 1942, this action was instituted against defendant, her natural father.

Did the adoption terminate the liability of the natural parent to support his minor child? The question has never been answered in this Commonwealth. The answers in other jurisdictions are few in number. Illinois courts construe their adoption statute strictly and hold that a natural parent may be required to support his minor child: Dwyer v. Dwyer, 336 Ill. 630. The New York courts have held that there is no liability but this is based on the explicit wording of the New York adoption statutes: Betz v. Horr, 276 N. Y. 83. Missouri and California would impose no liability, but there, too, the decisions may be based on the wording of the statutes: Shepherd v. Murphy, 332 Mo. 1176, 1180; Mitchell v. Brown, 18 Cal. App. 117, 120.

The Pennsylvania adoption statute contains no explicit provision. Are we to say because no provision is made it was the intention of the legislature to continue the liability of the natural parent? If that is so then the adoption procedure and technique has progressed no further than the ancient adoption proceedings of Babylon, Egypt, India, Greece, and Rome which concerned themselves chiefly with the continuance of the rites of the family cult or providing an heir for a childless family. In those proceedings the principle "best interest of the child" was as foreign as the social study and information which is the basis of modern adoptions.

Our statute provides the legal method by which a child is adopted. The word adoption signifies "taking over". It is not used where there is merely a transfer of possession. It is used where there is a transfer or taking over of legal liability. And here it is taking over the legal liability for a minor which rested on others. And whether the court will allow the liability

to be taken over is dependent on what is the best interest of the minor. This brings into consideration many factors such as race, color, religion, family background, education, heredity, age and health of the minor and adoptive parents, their economic and emotional stability, etc. Every bit of available social information and scientific knowledge is used in planning for the minor this new permanent and continuing relationship.[2] It has been truly said that adoption is not only a legal process but a social process as well.[3] The last step is and should be the legal process and it involves judicial consent to the liability that is being "taken over." It marks the end of the former relationship. In modern practice even the birth certificate is corrected and the adoptive parents are designated as the parents of the child. The old parents should disappear completely from the picture. The law and social process laboring together bring into being a family relationship which should ordinarily be of greater stability and provide a greater possible happiness and usefulness through the years than the one which is brought into being by the labor of natural force.

The permanency of the relationship is indicated by the case of Helen Frances Young's Adoption, 259 Pa.

---

[2] The Adoption Act of April 4, 1925, P. L. 127, sec. 3, 1 PS §3, provides for an investigation by some person or agency specifically designated by said court or judge to verify the statements of the petition and such other facts as will give the court full knowledge as to the desirability of the proposed adoption.

The Municipal Court rules require its adoption division to examine and investigate the facts set forth in the petition. This includes an investigation of the essential facts pertaining to the welfare of the child. At the hearing, the court has before it a full report to guide its decision as to whether the adoption prayed for will promote the welfare of the child. See Report of Municipal Court, 1940, p. 409.

[3] Ora Pendleton, A Decade of Experience on Adoption, Philadelphia. The Annals of The American Academy of Political and Social Science, November 1940.

Sophie Van S. Theis, Social Aspects of Child Adoption, New York. Child Welfare League of America, 1937.

573. There the natural mother sought to reassert her rights by a petition to set aside the adoption. The court in refusing the petition said (p. 577):

". . . by adoption a new status was created which cannot be stricken down because of regret of a parent who consented thereto."

There can be little stability in this new relationship if old ties still exist. This is recognized by the court in the pains taken to prevent the meeting of the natural parents and adoptive parents. Our statute provides that a personal appearance of the natural parents of the child may be held "at a different time and separate and apart from that of the other parties in interest": Act of April 4, 1925, P. L. 127, sec. 3, as amended by the Act of July 2, 1941, P. L. 229, 1 PS §3.

If the natural parent is to be made liable for support, we could not deny him the right to direct the child's life, her education, her religious training, and the name she is to bear. The emotional conflict and confusion which would thus result in the child by these ties of a double parentage would destroy the objective of a sound adoption policy. Modern adoption has no social reason for existence if it does not result in a normal home, a normal family relationship. There can be no such home or relationship if there are the ties and demands of two parents.

To hold that the natural parent is still liable for support we must also say that the child remains liable for the support of its natural parents in case of indigency. It is unthinkable that a condition can be tolerated where a natural parent after years of absence may appear and demand support from a child whom he has given to others. It is not the financial burden to the child that matters so much as the emotional and personality disturbance which would be bound to result in the sense of security thus broken, in the injustice of a legal system which would tolerate such a demand.

There can be no doubt that the child in the instant

case has already been subjected to the emotional conflict which we wish to avoid. She knows her natural parent and may even feel resentful that he may be allowed to escape what her attorney calls his natural duties. A hard case is apt to make bad law. To relieve her we cannot enunciate a principle that would destroy a generation of progress in the law of adoption.[4] The blame, if any, is not in the system but in the fault of her particular proceedings which permitted grandparents at advanced ages to adopt her. Their probable early death should have been a factor which should have weighed heavily against the adoption being allowed. It is true even with the best guards and standards adoptions may turn out badly. By following, however, accepted standards, by employing the latest social knowledge, by setting as the ultimate objective in an adoption the creation of a normal, balanced, and well-adjusted family relationship, we can minimize mistakes and attain the objective.

What is intended in adoptions is best illustrated by the provision of the Intestate Act of June 7, 1917, P. L. 429, and its amendments. The adopted person has no claim for inheritance from his natural parents or relatives. Neither can the natural parents claim inheritance from the adopted child. As expressed by Mr. Justice Stern in Caves' Estate, 326 Pa. 358, 366:

"This severs the child from his natural family tree and engrafts him upon that of his new parentage 'for *all* purposes of inheritance.' "

The language in the intestate laws expresses in explicit words what the legislature intended to accomplish by the adoption statute. In Fisher v. Robison, 329 Pa. 305, the court indicates that both the adoption statute and the Intestate Act must be construed together (p. 309).

---

[4] Judge Rhodes in Ottavi v. Timothy Burke Stripping Co., 140 Pa. Superior Ct. 389, said (p. 395) : "The successive statutes, examined historically and analytically, portray a steady broadening of the relationship between adopting parent and adopted child."

Statutes must be construed to effectuate the intention of the legislature.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters . . . (3) the mischief to be remedied; (4) the object to be attained; . . .": Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551.

The objective of our Adoption Law is clearly to bring into existence a new and permanent family relationship for the child. It is the objective of any adoption law. It is the popular and common conception of adoption. In The Columbia Encyclopedia (1941) it is stated:

"An adopted child generally assumes the rights and duties of a natural legitimate child. The natural parents, even if living, have no right to control over an adopted child, nor have they any duties toward it." The legal conception should not lag behind the common one.

The petition for support is dismissed.