Opinion
REESE, J.-
I
Introduction and Issues
This is an appeal from the judgment entered against defendant on March 17, 1982, in Pasadena Municipal Court in the principal amount of $2,500, *Supp. 3 representative of the amount tendered by plaintiff to defendant as security deposit under a written commercial lease executed by the parties in February, 1971.
Defendant submits two grounds as the basis for his appeal:
1. The claim of plaintiff is barred by the statute of limitations, either Code of Civil Procedure section 337 or section 343; and
2. The trial court erred in preventing defendant from introducing proof of alleged breaches of the lease by plaintiff occurring during a period after defendant’s transfer of the property and lease to a successor owner.
n
Factual Background
For our purposes the following summarization of facts will suffice:
In February 1971, plaintiff and defendant entered into a written lease for an original term of five years with an option to renew for an additional five years covering commercial property owned by defendant in Pasadena. Plaintiff paid, as required by the lease, the sum of $2,500 as and for security deposit to defendant.
On October 30, 1973, defendant transferred the property subject to the lease to Security Pictures, Inc. (Security). Defendant, in violation of section 1950.7 of the Civil Code, retained the security deposit. He did not advise plaintiff of the sale, but directed her to forward rents to Security without further explanation.
In accordance with the pertinent lease terms, plaintiff exercised her option to renew in 1976, extending her leasehold to May 1981. Upon expiration of the lease, she became involved in litigation with Security’s successor-in-interest (one John F. Tsem), concerning performance by the parties to the lease, vacated the premises, and demanded return of her $2,500 security deposit from defendant.
Upon defendant’s refusal to return the deposit, plaintiff commenced the instant action. After answering plaintiff’s complaint, defendant petitioned the superior court to have the instant action consolidated for trial with the above-mentioned action and cross-action for damages then pending in superior court between plaintiff and defendant’s second removed successor, Tsem. Defendant’s petition to consolidate was denied.
*Supp. 4 in
Trial Before the Court
The following allegations in plaintiff’s complaint were admitted in defendant’s answer and were not issues before the court:
A written lease was executed by the parties in February 1971 providing for a $2,500 security deposit, and first and last months’ rents, which plaintiff paid;
The lease provided a five-year term with a five-year option term;
That defendant transferred the property subject to the lease to successor-in-interest, Security, on October 30,1973, and that he failed to transfer plaintiff’s security deposit to Security or plaintiff.
The following witnesses for plaintiff testified as follows:
Peter Trypucko, husband of plaintiff and plaintiff’s general partner: That he executed the lease in question with the consent and knowledge of plaintiff; he identified the lease which was received in evidence; that he paid defendant the $2,500 security deposit upon execution of the lease and that the premises were occupied by him and plaintiff pursuant to said lease; that neither he nor plaintiff had received return of the security deposit, nor had he or plaintiff received any notification of any kind from any person concerning disposition of the deposit; that subsequent to notification by defendant in 1973, he paid the rents to Security; that the lease option was exercised, and the premises were vacated in May 1981 upon the expiration of the lease; and that he performed all conditions and covenants under the lease to be performed by him or plaintiff.
Defendant, pursuant to Evidence Code section 776: That the subject lease was executed by him and that he did receive the $2,500 security deposit from plaintiff; that he spent the same; that he transferred the subject property to Security on October 30,1973; that he did not transfer or cause to be transferred the security deposit to plaintiff or Security. The court denied defendant’s motion to dismiss upon grounds that plaintiff’s case was barred by the statute of limitations.
Defendant called the following witness who testified as follows:
John F. Tsem: That he purchased the subject property from Security in 1980 and presently owned the same; that he received no security deposit from Security and that none was returned to plaintiff; and that actions were pending in superior court between him and plaintiff claiming mutual breach of the lease.
*Supp. 5 IV
Discussion
A. Statute of Limitations
Did the trial court err in ruling that the statute of limitations (Code Civ. Proc., §§ 337 or 343) did not bar plaintiff’s cause of action for return of the security deposit? We think not for the following reasons:
1. The appropriate statute of limitations in this case is four years, either under Code of Civil Procedure section 337 (an action on a written contract) or Code of Civil Procedure section 343 (an action for which relief is not otherwise provided). The determinative underlying issue is the time of commencement of the running of the four-year statute.
2. In February 1971 when plaintiff and defendant executed the subject lease, and on October 30, 1973, when defendant conveyed the subject property to Security, the applicable statute governing security deposits was Civil Code section 1950.5.[1]
“(a) Any payment or deposit of money the primary function of which is to secure the performance of a rental agreement or any part of such an agreement, other than a payment or deposit, including an advance payment of rent, made to secure the execution of a rental agreement, shall be governed by the provisions of this section.
“(b) Any such payment or deposit of money shall be held by the landlord for the tenant who is party to such agreement. The claim of a tenant to such payment or deposit shall be prior to the claim of any creditor of the landlord, except a trustee in bankruptcy.
“(c) The landlord may claim of such payment or deposit only such amounts as are reasonably necessary to remedy tenant defaults in the payment of rent, to repair damages to the premises caused by the tenant, or to clean such premises upon termination of the tenancy, if the payment or deposit is made for any or all of those specific purposes. Any remaining portion of such payment or deposit shall be returned to the tenant no later than two weeks after termination of his tenancy.
*Supp. 6 “(d) Upon termination of the landlord’s interest in the dwelling unit in question, whether by sale, assignment, death, appointment of receiver or otherwise, the landlord or his agent shall, within a reasonable time, do one of the following acts, either of which shall relieve him of further liability with respect to such payment or deposit:
“(1) Transfer the portion of such payment or deposit remaining after any lawful deductions made under subdivision (c) to the landlord’s successor in interest, and thereafter notify the tenant by registered mail of such transfer, and of the transferee’s name and address.
“(2) Return the portion of such payment or deposit remaining after any lawful deductions made under subdivision (c) to the tenant.
“(e) Upon receipt of any portion of such payment or deposit under paragraph (1) of subdivision (d), the transferee shall have all of the rights and obligations of a landlord holding such payment or deposit with respect to such payment or deposit.
“(f) The bad faith retention by a landlord or transferee of a payment or deposit or any portion thereof, in violation of this section, may subject the landlord or his transferee to damages not to exceed two hundred dollars ($200), in addition to any actual damages.
“(g) This section shall become operative on January 1, 1971, and shall apply only to payments or deposits made on or after such date.”
3. When defendant transferred the subject property and lease to Security on October 30, 1973, under subdivision (d) of Civil Code section 1950.5, he was required to perform one of two acts which would have relieved him of further liability with respect to the security deposit:
(a) Transfer the deposit less lawful deductions to Security, his successor-in-interest, and notify the plaintiff by registered mail of such transactions, and of the successor’s name and address; or
(b) Return the deposit less lawful deductions to the plaintiff, his tenant.
Defendant did neither of the above acts; he retained the security deposit and testified he spent the same. His liability thereon continued to the expiration of the lease under which it was deposited. Under the statute, he could have terminated his liability at any time prior to the expiration of the lease by tendering the deposit, less lawful deductions, to either plaintiff or his successor in interest, but he chose to do neither. Plaintiff was not obligated to treat the failure *Supp. 7 of defendant to perform when he transferred the subject property to Security as a final breach. The following comment (4 Corbin, Contracts (1951) § 989, p. 967) is pertinent: “Where a defendant definitely and unconditionally repudiates a contract before the time fixed for his performance, ‘[tjhere is no necessity for making the statutory period of limitations begin to run against the plaintiff until the day fixed by the contract for the rendition of performance, at least unless the plaintiff definitely elects to regard the anticipatory repudiation as a final breach. It is generally said that he need not so elect and that he may properly wait until the time that performance was due, before regarding the contract as broken.’” (Brewer v. Siimpson (1960) 53 Cal.2d 567, 593 [2 Cal.Rptr. 609, 349 P.2d 289], citing: Brown v. Superior Court (1949) 34 Cal.2d 559, 564 [212 P.2d 878] and Union Sugar Co. v. Hollister Estate Co.(1935) 3 Cal.2d 740, 745-746 [47 P.2d 273].) The latter case, relating to a party’s rights on an anticipatory breach of an executory contract, most closely parallels the instant problem and leads to the most appropriate and equitable result here. There the court held as follows: “ ‘The counterclaim was not barred at the date of commencement of the action on June 25, 1929. The farming contract was an executory contract, continuing over the beet season of 1925, and could not be completed or fully performed by appellant until the end of that season, the date of which is established by evidence as the month of October, 1925. In such a contract, where the parties did not mutually abandon or rescind it upon a breach or successive breaches, the injured party could wait until the time arrived for a complete performance by the other party and then bring an action for damages for such breaches. (Ross v. Tabor, 53 Cal. App. 605 [200 Pac. 971].) Respondent was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election to still rely on it, and the statute of limitations could not begin to run until it had made its election. (Richter v. Union Land etc. Co., 129 Cal. 367 [62 Pac. 39]; Coulter v. Sausalito Bay Water Co., 122 Cal. App. 480 [10 Pac. (2d) 780]’” (Id., at pp. 745-746.)
In the case before us, the lease, by virtue of its terms and the effect upon it of section 1950.5 (1950.7) of the Civil Code, constituted a continuing contract involving the rendering of benefits to the plaintiff before the date for final performance, the lease expiration date. The pertinent rule is again stated in 16 California Jurisprudence, section 110, page 511: “In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action.” (Lubin v. Lubin (1956) 144 Cal.App.2d 781, 791 [302 P.2d 49].)
We find the statute of limitations commenced to run in the within action upon the expiration of the lease and termination of the tenancy in May 1981, and expired four years thereafter in May 1985. Plaintiff’s action, filed in May of 1981, was not barred.
*Supp. 8 B. Evidence of Plaintiff’s Breach
The defendant next contends the trial court erred in refusing his attempt to introduce evidence relating to plaintiff’s breach of the lease occurring seven years after defendant had transferred the property and lease. We find no merit in this contention.
1. The defendant made no effort to introduce evidence, if any, of plaintiff’s breach occurring prior to October 30, 1973, the date of his transfer to Security, which evidence would have been relevant if admitted.
2. Through his second-removed successor in interest, Tsem, he sought to introduce evidence of plaintiff’s breach of performance occurring after 1980, the year Tsem purchased the subject property from Security. The trial court properly denied the introduction of such evidence. Such a defense, if any, arising after defendant’s transfer of the property and lease was not available to defendant. The grantee of a leasehold reversion takes all rights and remedies under the lease with the property. (Rosenkranz v. Pellin (1950) 99 Cal.App.2d 650 [222 P.2d 249]; Erving v. Jas. H. Goodman & Co. Bank (1915) 171 Cal. 559 [153 P. 945]; Reios v. Mardis (1912) 18 Cal.App. 276 [122 P. 1091].)
The judgment is affirmed. Respondent to recover costs on appeal.
Bernstein, Acting P. J., and Hogoboom, J., concurred.

In 1977 the Civil Code was amended creating a new section 1950.5, in substantially the same language, and a new section 1950.7, again in substantially the same language, relating to nonresidential leases.