Filed 3/3/14  Ferguson v. Trust Holding Service Co. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SUSAN L. FERGUSON et al., | B230972 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. EC049118) |
| TRUST HOLDING SERVICE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Milton, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Susan L. Ferguson, in pro. per.; Campbell & Farahani and Frances M. Campbell for Plaintiffs and Appellants.

Ronald D. Tym for Defendant and Respondent Yun Matsuba.

_____

Susan Ferguson and Brent Berry appeal from a judgment in favor of Trust Holding Service Company (THS), Owner Management Services, LLC (OMS), and Yun Matsuba. Appellants argue the trial court erred in granting a motion for nonsuit on their causes of action for rent skimming and fraud.[1] We agree as to the rent skimming cause of action and reverse its dismissal. We affirm the judgment in all other respects.

### FACTUAL AND PROCEDURAL SUMMARY

Appellants rented a property in Burbank on a one-year lease, beginning on August 1, 2006. In November 2006, Joseph Huynh bought the property with two promissory notes, for $600,000 and $150,000, secured by deeds of trust in favor of New Century Mortgage Corporation. In June 2007, Huynh transferred the property into an inter vivos trust, with THS as the trustee and Huynh as the sole beneficiary. Beginning on August 1, 2007, after the expiration of the one-year lease, appellants made monthly rent payments to THS.

On August 3, 2007, appellants received a notice that the first lien on the property was in default in the amount of $17,155.43. Dan Powers, a THS employee, assured Ferguson that the property would be sold at a short sale to THS investors. In November 2007, appellants received a notice of trustee's sale under the first deed of trust, showing an unpaid balance of $626,547.23. Powers again assured Ferguson that a short sale was being negotiated.

In May 2008, THS gave appellants a 60-day notice to vacate the property by July 31, 2008, claiming that plumbing problems had rendered it uninhabitable. A plumber had been called to the property several times, and two weeks before the notice, appellants had paid for plumbing repairs and deducted the expense from the rent. Appellants contested the notice to vacate as retaliatory. On July 14, 2008, the property was sold to Avelo Mortgage LLC (Avelo) at a trustee's sale. On August 6, 2008, Avelo notified appellants to vacate the premises.

---

[1] Appellants do not contest the dismissal of their quiet title cause of action.

2

In a series of letters between July 11 and August 14, 2008, appellants notified THS they needed to move because the property had been sold. They repeatedly demanded that THS return their security deposit and last month's rent and refund their payment of rent for the period from July 15 to July 31, 2007. THS refused to do so until appellants vacated the premises and returned the keys. According to THS, it was contesting the foreclosure sale and was in the process of repurchasing the property. THS eventually offered to forward the security deposit and rent to the new landlord, which it identified as Wells Fargo Bank, if appellants chose to remain on the property. Appellants continued to live there without paying rent until June 2010. They moved out after a writ of possession and a $10,000 judgment were issued in favor of Avelo in the last of four unlawful detainer actions against appellants.

Prior to that, in June 2009, Huynh had quitclaimed the property to appellants. Appellants sued THS for rent skimming and fraud, and to quiet title. Avelo was named as a defendant in the quiet title cause of action. We affirmed the order of dismissal as to Avelo. (*Ferguson v. Avelo Mortg., LLC* (June 1, 2011, B223447) review den. and opn. ordered nonpub. Sept. 14, 2011, S194764.)

A one-day bench trial of appellants' claims against THS was held in December 2010. The trial court allowed an amendment to the second amended complaint to add OMS and Matsuba as defendants. Matsuba had been identified by THS as its person most knowledgeable, and she was added as a defendant on the theory that she was doing business under fictitious business names. Matsuba was called as a hostile witness in appellants' case-in-chief. She testified that the property was brought to THS for a short sale, that THS used the rent collected from appellants to pay off the $150,000 second deed of trust at the end of 2007 or beginning of 2008, and that THS was denied access to the property.

After appellants rested, THS moved for a nonsuit. The court denied appellants' request to reopen the case, explaining that it had no ability to do so after a nonsuit motion. As to the rent skimming cause of action, the court credited Matsuba's testimony that the second deed of trust was paid off in full and that the short sale fell through

3

because THS was denied access to the property. The court found that there was no evidence to support appellants' alternative theory—that THS collected rent under a false claim of title, and concluded that it was irrelevant whether THS collected rent without a broker's license. The court did not make a clear finding whether appellants had standing to sue under the rent skimming statute or whether they had suffered damages. The court found there was no fraud because THS was attempting to arrange a short sale and appellants could not show detrimental reliance. The court granted the motion for nonsuit and dismissed the case. Judgment of dismissal was entered in favor of THS.

This appeal followed. The judgment of dismissal was later amended to add Matsuba and OMS, who were then added as respondents to this appeal. Due to ongoing bankruptcy proceedings involving THS and OMS, the appeal proceeds only against Matsuba.

## DISCUSSION

A motion for nonsuit is no longer recognized in a bench trial after the close of the plaintiff's evidence. The correct motion in that situation is for judgment under Code of Civil Procedure section 631.8, and a motion for nonsuit may be treated as a motion for judgment for the defendant under that statute. (*Lingenfelter v. County of Fresno* (2007) 154 Cal.App.4th 198, 206, and cases cited.) Thus, we treat the court's nonsuit order as one for judgment.

Code of Civil Procedure section 631.8 requires the trial court to "make a statement of decision." In a one-day trial, as here, the statement of decision may be made orally on the record. (*Id.*, § 632.) Although the trial court did not issue a cohesive statement of decision when it granted the motion, its position on most issues may be ascertained from the discussion with counsel.

In a motion for judgment, the trial court "must decide questions of credibility, must weigh the evidence, and must make findings of fact. [Citations.]" (*Lingenfelter v. County of Fresno*, *supra*, 154 Cal.App.4th at p. 204.) In reviewing an order granting such a motion, we are bound by the trial court's findings that are supported by substantial

4

evidence, but not by its interpretation of the law. (*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012.)

The denial of a motion to reopen evidence is reviewed for abuse of discretion, as is the denial of leave to amend the complaint. (*Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 208; *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761.)

I

In this section, we address the parties' divergent interpretations of several provisions of the rent skimming statutes, Civil Code section 890 et seq.[2] The purpose of statutory construction is to give effect to the legislative intent, which is "generally determined from the plain or ordinary meaning of the statutory language. The statute's every word and provision should be given effect so that no part is useless, deprived of meaning or contradictory. Interpretation of the statute should be consistent with the purpose of the statute and statutory framework." (*Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 189 Cal.App.4th 101, 109.)

A. *Section 890, subdivision (a)(1)*

Rent skimming is defined as "using revenue received from the rental of a parcel of residential real property at any time during the first year period after acquiring that property without first applying the revenue or an equivalent amount to the payments due on all mortgages and deeds of trust encumbering that property." (§ 890, subd. (a)(1).) Appellants argue that THS engaged in rent skimming under this subdivision because it did not make payments on any or all liens.[3] Matsuba in turn appears to contend that the statute was not intended to apply where the revenue from rent is insufficient to cover the payments due under all liens, and therefore payments are made on some liens but not on others.

---

[2] Unless otherwise indicated, statutory references are to the Civil Code.

[3] We use the word "liens" as a shorthand substitute for the phrase "mortgages and deeds of trust."

Typically, a rent skimmer makes no payments on any lien. (See *People v. Bell* (1996) 45 Cal.App.4th 1030, 1039, 1041.) But the plain language of section 890, subdivision (a)(1) requires that revenue from rent be applied *first* to the payments *due* on *all* liens. On its face, the statute reaches cases where a portion of the revenue from rent is applied to payments due on some but not all liens, and the remaining portion is applied to something other than payments due on liens. On that basis, a valid claim for rent skimming under this subdivision could be made by showing that (1) no payments were made on any liens, (2) a portion of the rent revenue was applied to payments due on some but not all liens, or (3) rent revenue was used to make anticipatory payments on some liens while foregoing payments already due on others. We do not decide whether paying one lien over another qualifies as rent skimming where payments are due under both liens, and rent revenue is insufficient to pay both.

*B. Section 890, subdivision (a)(2)*

The definition of rent skimming also includes "receiving revenue from the rental of a parcel of residential real property where the person receiving that revenue, without the consent of the owner or owner's agent, asserted possession or ownership of the residential property, whether under a false claim of title, by trespass, or any other unauthorized means, rented the property to another, and collected rents from the other person for the rental of the property." (§ 890, subd. (a)(2).) Appellants argue THS engaged in rent skimming under this subdivision because it collected rent without a broker's license and under a forged trust agreement.

As the court explained in *People v. Lapcheske* (1999) 73 Cal.App.4th 571, 574, section 890, subdivision (a)(2) defines rent skimming in the context of adverse possession, where a defendant rents out someone else's property on the defendant's own behalf without the owner's consent. The statute was not intended to impose liability for licensing violations, but for collecting rent while asserting possession or ownership of the

6

property by "unauthorized means," such as a false claim of title or trespass. (§ 890, subd. (a)(2).)[4] Appellants do not have a valid claim for rent skimming under this subdivision.

*C. Section 891, subdivision (d)*

Section 891 allows a tenant of a residential property to "bring an action against a person who has engaged in rent skimming with respect to that property for the recovery of actual damages, including any security, as defined in Section 1950.5, and moving expenses if the property is sold at a foreclosure sale and the tenant was required to move." (§ 891, subd. (d).) A prevailing tenant also is entitled to attorney fees and costs and may be awarded punitive damages. (*Ibid*.)

Matsuba argues that to recover actual damages under the statute tenants must show they were required to move because of a foreclosure. In the trial court, THS cited the Witkin and Rutter Group treatises for this proposition. (See 4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transactions in Real Property, § 96, p. 889 ["tenants required to move by a foreclosure, . . . may bring actions for rent skimming"]; Friedman et al., Cal. Practice Guide: Landlord–Tenant (The Rutter Group 2013) ¶ 2:534, p. 2B-164 ["Tenants forced to vacate their units prematurely because of foreclosure sale resulting from the rent skimming practice likewise have a civil damages remedy: They are entitled to recover actual damages—including any security under . . . § 1950.5, and moving expenses—plus attorney fees and costs"].) The trial court did not make a clear finding on this issue, although it suggested that appellants may have a claim for their security deposit under section 1950.5.

To the extent the court may have granted the nonsuit motion on the ground that a tenant needs to vacate the property in order to bring a claim for rent skimming, the syntax

---

[4] Appellants do not appear to challenge the court's conclusion that it was unable to decide whether the trust agreement was forged because of the fact that some letters in the signatures were printed and others were in cursive. Appellants claim their theory at trial was that the notary public's signature on the trust agreement was forged, and that Huynh was a "straw buyer" for THS. That theory does not fit into the definition of rent skimming in section 890, subdivision (b) that rent be collected without the owner's consent.

of section 891, subdivision (d) does not support such a ruling. The subordinate clause, "if the property is sold at a foreclosure sale and the tenant was required to move," modifies the last antecedent "moving expenses" rather than the remote antecedent "actual damages." (See *Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 545 [explaining the last antecedent rule of statutory construction].) Nothing in the plain language of subdivision (d) suggests that it was intended to apply only to tenants forced to move or forced to move prematurely. In foreclosure, tenants on fixed-term leases may be asked to move only under certain limited circumstances, and even tenants on month-to-month leases and periodic tenancies are entitled to substantial notice before they are required to quit. (See Deering's Ann. Code Civ. Proc. (2014 supp.) foll. § 1161b, p. 64 [currently requiring 90-day notice, up from former 60-day notice requirement].) It is undisputed that Avelo gave appellants the statutorily required notice to quit after the foreclosure, brought several unlawful detainer actions against them after they refused to vacate pursuant to that notice, and was awarded a writ of possession requiring appellants to move out. Appellants eventually did incur moving expenses as a result of the foreclosure.[5]

Moreover, a tenant need not vacate the premises to be able to sue a former landlord for a security deposit if the landlord did not turn over the deposit to the new landlord and did not notify the tenant in accordance with section 1950.5, subdivision (h). (See § 1950.5, subd. (j) [former and successor landlords jointly and severally liable for non-return of security deposit].) The former landlord's obligation to return the security deposit cannot be offset by the tenant's post-transfer breaches, as those defenses belong to the successor landlord. (See *Trypucko v. Clark* (1983) 142 Cal.App.3d Supp. 1, 8.) Thus, the fact that appellants remained on the property after the foreclosure does not preclude them from suing their former landlord for their security deposit. It is undisputed that THS did not return appellants' security deposit. There also is no evidence that the

---

[5] The notice to quit that THS gave appellants in May 2007 is irrelevant since there is no evidence that it caused appellants to move out.

security deposit was transferred to Avelo or that appellants were notified of a transfer as required by section 1950.5, subdivision (h)(1).

In sum, appellants had standing to bring a claim under section 891, subdivision (d) even though they remained on the property after the foreclosure. While we need not determine what actual damages besides the security deposit and moving expenses may be recoverable under this subdivision, we note that, under section 891, subdivision (c), a lender may sue to recover rent collected by a rent skimmer. As tenants, appellants were required to pay rent as consideration for living on the property but had no interest in how rent revenue was applied; they cannot claim the rent they paid to THS as actual damages. Nor should THS be held accountable for appellants' decision to embroil themselves in the long-lasting legal battle to quiet title to the property following the foreclosure or to hold over and defend against Avelo's unlawful detainer actions.

## II

Appellants argue there was no substantial evidence to support dismissal of their claims for rent skimming and fraud, and the trial court abused its discretion in denying their request to reopen the evidence.

In applying the substantial evidence standard of review to a judgment entered under Code of Civil Procedure section 631.8, we review the record in the light most favorable to the judgment and draw all reasonable inferences in favor of the prevailing party. "We will not reverse the trial court's order granting the motion if its findings are supported by substantial evidence, even if other evidence in the record conflicts." (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1263.) But the substantial evidence standard "does not require us to blindly seize any evidence in support of the trier of fact's findings in order to affirm the judgment. [Citation.] Rather, it compels us to determine whether a reasonable trier of fact could have found for the respondent based on the entire record. [Citation.] This is so because 'substantial' is not synonymous with 'any' evidence, but refers to the quality, not the quantity of the evidence. [Citation.] So, after reviewing the whole record, we must determine whether there exists substantial evidence, which is evidence of ponderable legal significance that

9

is reasonable, credible and of solid value, supporting the challenged findings of the trier of fact." (*Quigley v. McClellan* (2013) 214 Cal.App.4th 1276, 1282–1283.)

### A. Rent Skimming

The dispositive factual issues on appellants' rent skimming claim under section 890, subdivision (a)(1) are (1) whether THS applied rent revenue (or an equivalent amount) to payments due on the two liens before it used that money for any other purpose, and (2) whether it used the rent revenue (or a portion of it) to pay off the junior lien, making payments on that lien that were not yet due.

It is undisputed that appellant paid $2,500 in monthly rent, for a total of $30,000 between August 2007 and July 2008. It also is undisputed that THS made no payments on the senior lien during that period, and that in August 2007 the payments on that lien were in default by over $17,000. The only evidence that THS paid off the junior lien came from the testimony of Matsuba, who was called as a hostile witness in appellants' case-in-chief.[6] Contrary to Matsuba's contention on appeal, there is no evidence that the junior lien was in default or foreclosure at any time. The portion of her own testimony on which Matsuba relies does not mention the junior lien at all. Instead, it states generally that the "house is upside down in default at the time. House is foreclosing. They want to do a short sales [*sic*]." This testimony is consistent with evidence of the default and foreclosure of the senior lien, but it does not support an inference that the junior lien also was in foreclosure.

Matsuba identified New Century as the junior lien holder. She claimed it was paid off "some time December 2007 or early 2008." Matsuba could not account for THS's use of rent revenue between August 2007 and the time the junior lien was paid off. She testified generally that THS paid the property's taxes and insurance, made plumbing repairs, and had "to save the money" to pay off the junior lien. None of these uses of rent

---

[6] Matsuba's short, halting, disjointed statements are often vague and difficult to follow.

revenue is allowed under section 890, subdivision (a)(1) before that revenue is applied to outstanding payments on all liens.[7]

Matsuba contends the evidence shows the junior lien of $150,000 was completely paid off, citing to the trial court's statement that THS "paid off $150,000 second." Her testimony was as follows: "I know we have the documents for paid off the junior liens and right here exhibit no. 3—$150,000 for the junior liens. We paid off. The documents should be—legal department have it." Exhibit no. 3, which Matsuba referenced, is the second deed of trust on the property; it sets out $150,000 as the amount owed on the junior lien, not the amount actually paid on it. Matsuba did not testify as to how much THS actually paid to retire the lien, and no other evidence was presented on that point.

At the beginning of trial, appellants' counsel moved for a continuance or to exclude THS's documentary evidence of a payoff letter and documents relating to a short sale, which she maintained she had not seen before. The court denied the motion, but the record does not show the documents were introduced in appellants' case-in-chief. It would be speculative to conclude that THS paid $150,000 on the junior lien without some evidence that this amount was actually due and not subject to negotiation. It also is unclear from the record why THS would make such a substantial payment when it collected no more than $30,000 in rent. Nor did Matsuba explain why the junior lien had to be paid off first.

As to the senior lien, Matsuba testified, "[W]e was going to be paid off Avelo. We were set up to pay it off in July. We have to take care of the junior lien first. . . . [¶] First lien was 2008 July. We got denied access the property. That's why house got sold." From this testimony, the trial court deduced that THS tried to pay off the first lien, but because it was denied access to the premises, it was "unable to get the moneys needed to do that . . . ." The court's inference that THS needed access to the property to obtain

---

[7] Section 893 creates an affirmative defense for a natural person who uses revenue from rent to correct code violations relating to habitability within 30 days of collecting the rent if the person has no other funds. Matsuba does not rely on this defense.

11

funding was speculative. Matsuba's testimony does not make clear who denied THS "access to the property" and when, or why access was needed. Although Matsuba testified the property was brought to THS for a short sale, she did not testify that THS actually tried to negotiate a short sale on the first lien, and no documents relating to a short sale were offered during appellants' case in chief.[8]

The purpose of a motion for judgment under Code of Civil Procedure section 631.8 is "to avoid the unnecessary deferral of a ruling that otherwise could be made after the plaintiff's evidence." Since the denial of such a motion does not preclude the defendant from presenting evidence, the motion allows "the defendant to submit the case on the merits after presentation of the plaintiff's evidence, without being put to the Hobson's choice of presenting unnecessary evidence or taking the chance of losing without it." (*Lingenfelter v. County of Fresno*, *supra*, 154 Cal.App.4th at p. 205.) We cannot say that the evidence elicited in appellants' case-in-chief made it unnecessary for the defense to present evidence regarding the short sale of the senior lien and payoff of the junior lien. While the court could have credited Matsuba's testimony that the junior lien was discharged and drawn reasonable inferences from that fact, her testimony was too vague to establish that THS applied rent revenue (or an equivalent amount) in the first instance to payments that were actually due on the liens.

The court incorrectly believed it had no discretion to reopen the evidence after a nonsuit motion and abused its discretion in denying appellants' request to be allowed to rebut the unfavorable testimony on which the court based its findings. Under Code of

---

[8] In their reply brief, appellants cite *In re Mi La Sul* (Bkrtcy. C.D.Cal. 2007) 380 B.R. 546, where the court dismissed bad faith bankruptcy petitions filed by THS, Matsuba, and entities connected to them because the petitions were filed "to gain time so that a Matsuba employee can continue to seek a short sale of the first trust deed and thus a Matsuba entity will become the owner of the property without paying the full amount of the liens on that property. It is to create equity in property that had none when a Matsuba company gained control of it." (*Id*. at p. 551.) The bankruptcy court also explained that "[o]nce title is transferred to the trust, Matsuba or one of her entities begins negotiating with the most junior liens to pay them off at less than is owed." (*Id*. at p. 552.) *In re Mi La Sul* highlights the dearth of evidence before the trial court in this case.

12

Civil Procedure section 631.8, "[t]he court may consider all evidence received, provided, however, the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party." Trial courts have broad discretion in deciding whether to reopen the evidence and may do so even after a motion for judgment. (*Horning v. Shilberg*, *supra*, 130 Cal.App.4th at p. 208; *Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 49.) A failure to exercise discretion upon request is an abuse of discretion. (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.)

At oral argument, Matsuba's counsel asserted that a court may allow additional evidence in rebuttal only if it considered "defensive matter" in ruling on the motion for judgment, citing *People v. Mobile Oil Corp.* (1983) 143 Cal.App.3d 261, 271. Counsel incorrectly assumed that Matsuba's testimony was not "defensive matter" since it was elicited by appellants. Appellants called Matsuba as an adverse witness and conducted a "cross-examination" of her under Evidence Code section 776. "[E]vidence elicited from an adverse party under section 776 is not treated as the plaintiff's evidence." (*Miller v. Dussault* (1972) 26 Cal.App.3d 311, 318, cited in *People v. Mobile Oil Corp.*, at p. 269.) Once it became clear that the court would consider and credit Matsuba's testimony, which was adverse to appellants' case, appellants had the right to request permission to present rebuttal evidence, and the court erred in failing to exercise its discretion on their request.

Appellants argue they should have been allowed to rebut the inferences the trial court drew from Matsuba's testimony—that THS actually paid $150,000 on the junior lien and that appellants denied THS access to the property—by presenting THS's discovery responses on the lien payment issue and by recalling Ferguson on the access issue. ARB 10-11)~ Ferguson testified only that THS sought access to the property in March or April 2008, but she was not asked specifically whether access was granted or

13

denied.  Matsuba in turn testified only that THS was denied access to the property, but she was not asked who denied THS access or when that occurred.  The testimony was, thus, not directly in conflict, and Ferguson's credibility was not necessarily at issue.  But to the extent the court was prepared to draw inferences unfavorable to appellants, they had the right to recall Ferguson, or present other evidence, to rebut Matsuba's testimony.  (See *Howard Contracting, Inc. v. G. A. MacDonald Construction Co.*, *supra*, 71 Cal.App.4th at p. 49.)

We reverse the dismissal of the rent skimming cause of action and remand the case for a limited new trial on that cause.  On retrial, the posture of the case will be the same as if the motion for judgment had not been granted.  (See *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1017–1018, quoting *Pinsker v. Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160, 166–167.)

### B.  Fraud

Appellants argue they were fraudulently induced to pay rent to THS by its assurance that the house would not be sold at foreclosure.  They also claim they would not have paid rent had they known THS did not have a broker's license and that the trust agreement was forged.  The trial court found that appellants had shown no detriment.  We agree.

A fraud plaintiff must show that he or she has suffered consequential damages in reasonable reliance on the actionable misrepresentation.  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1499.)  It is unclear how appellants were damaged by making their normal monthly rent payments and living on the property the entire time they paid rent.  (Cf. *id.* at p. 1500 [finding plaintiffs suffered no damages from continuing to pay on loans in reliance on promised loan modification where bank credited payments toward amount they undisputedly owed and allowed them to remain in their home].)

The fraud claim was properly dismissed.

### III

In a similar vein, appellants argue the court should have granted them leave to allege a violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.,

14

UCL) because THS collected rent without a broker's license. While the court initially stated it could not permit an amendment after a nonsuit motion, it did consider the request on the merits and rejected it because appellants were not entitled to restitution of rent they paid to live on the property.

The denial of a motion for leave to amend is prejudicial only if the proposed amendment would support a valid claim for relief. (*Huff v. Wilkins*, *supra*, 138 Cal.App.4th at p. 746.) Appellants are ineligible for restitution under the UCL because they cannot show an economic injury in fact; there is no evidence that, by paying their normal monthly rent to THS, they expended more money than they otherwise would have had to pay to live on the property. (See *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323, 337.) The court did not abuse its discretion in denying leave to allege a violation of the UCL.

The record does not support appellants' argument that the court abused its discretion in not allowing them to allege a cause of action under section 1950.5 for the return of their security deposit. The trial court at one point stated, "I suppose [appellants are] in the position to bring a suit under 1950.5." Appellants' counsel specified that appellants could sue for "bad faith retention of the security deposit." But counsel did not ask the court for leave to amend the complaint to state a separate cause of action under section 1950.5.

## DISPOSITION

The judgment is reversed in part, and the matter is remanded for a new trial on the rent skimming cause of action consistent with the views expressed in this opinion.  The judgment is affirmed in all other respects.  The parties are to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    EPSTEIN, P. J.
We concur:



        WILLHITE, J.



        MANELLA, J.


16