Filed 5/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELOQUENCE CORPORATION,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>HOME CONSIGNMENT CENTER et al.,<br><br>        Defendants and Respondents. | A156925<br><br>(Contra Costa County<br>Super. Ct. No. C17-01506) |

Plaintiff Eloquence Corporation (Eloquence) sued defendants Home Consignment Center (HCC), Johnny Crowell, and John Fondnazio, asserting breach of contract and open book account causes of action for failure to pay invoices pursuant to a consignment agreement. Defendants moved for summary judgment, arguing that the causes of action were barred by the four-year statute of limitations and that Eloquence could not show the creation of an open book account. The trial court granted defendants' motion for summary judgment. Eloquence appeals. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Michael Werdiger, Inc. (MWI) and Eloquence entered into a consignment agreement (Agreement) with HCC. The Agreement provided MWI and Eloquence (the consignors) would consign jewelry and loose diamonds to HCC (the consignee) for resale. The Agreement stated that HCC would send a monthly sales report of each item it sold. Upon receipt of the sales report, MWI and Eloquence would then prepare an invoice setting forth

1

the payment due from HCC.  The Agreement required HCC to pay the invoices within 30 days:  "Consignee shall remit payment to Consignor in the amount of such Sales Invoice within 30 days of the date of the Sales Invoice."

The Agreement also provided for a bi-annual reconciliation of the inventory of consigned goods.  Subsequent to this reconciliation, the Agreement required HCC to pay the invoices within 30 days:  "Any inventory which is unaccounted for subsequent to the reconciliation will be invoiced by Consignor and paid on terms of net 30 days by the Consignee."

Following one such reconciliation, MWI issued two invoices for "items reported as missing" from an HCC store.  The first invoice itemized five pieces of jewelry for a total of $45,170.  The second invoice itemized eleven pieces of jewelry for a total of $18,915.  Both invoices were dated November 10, 2009.  Eloquence gave HCC a five-month extension of the Agreement's due date for payment of these invoices.  Thus, the November 10, 2009 invoices specified a due date of May 9, 2010.

Delivery of consigned goods to HCC continued for the next seven years, totaling $616,633.30 in sales invoices.  During that time, Eloquence and HCC entered into an amended agreement to reflect MWI's merger into Eloquence.  The substantive provisions of the amended agreement, including those regarding invoices and payment, were left unchanged.  Because there appears no dispute that these substantive provisions apply to the parties herein, for brevity's sake we will continue using the term "Agreement" to refer to the parties' agreement.

In 2017, Eloquence filed a complaint against HCC and its general partners Johnny Crowell and John Fondnazio.  The complaint asserted causes of action for "breach of written agreement" and "open book account." On the breach of contract cause of action, Eloquence alleged that HCC

2

breached the Agreement by failing to pay the two November 10, 2009 invoices, in the total amount of $64,085.  It alleged that in 2016, Eloquence "elected to treat the breach as terminating the Consignment Agreements" and "close the account" with HCC.  Eloquence sought $64,085 with 12 percent annual interest and attorney fees under this cause of action.

On the open book account cause of action, Eloquence alleged that it "furnished to HCC, at its special instance and request, on an open book account, merchandise and/or services of the agreed upon value of $64,085," the amount now owed by HCC.  Eloquence sought $64,085 with 10 percent annual interest under this cause of action.  It also prayed for costs of suit under both causes of action.

Defendants moved for summary judgment, arguing that the causes of action were barred by the four-year statute of limitations and that Eloquence could not show the creation of an open book account.  Eloquence opposed the motion for summary judgment, arguing it was "entitled to ignore HCC's breach of contract until the date for final performance, the contract termination date."  Eloquence also contended that it had shown the existence of an open book account and that its cause of action was timely because the account remained open until at least 2016.

In January 2019, the trial court granted summary judgment.  It found Eloquence's breach of contract cause of action was time-barred because the Agreement contemplated a series of discrete transactions each evidenced by a separate invoice, and thus Eloquence's breach of contract claim accrued when the November 10, 2009 invoices came due.  The trial court also determined that Eloquence's open book account failed because there was no agreement by the parties to enter into such an account.  Eloquence appealed.

3

Eloquence subsequently filed a motion to augment the record on appeal to include the judgment entered in favor of defendants on August 27, 2019. The motion was granted. We will treat the notice of appeal as having been filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(2).)

## DISCUSSION

### A. Standard of Review

The rules governing review of an order granting summary judgment are well established. A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[1] A defendant carries the initial burden of showing that a cause of action has no merit by demonstrating that one or more elements of the cause of action cannot be established or a complete defense to it exists. (§ 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue exists. (*Ibid.*) The evidence in favor of the party opposing the motion must be liberally construed, and all doubts concerning the evidence must be resolved in favor of that party. (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320–321.) We review an order granting summary judgment de novo. (*Id.* at p. 320.)

### B. Breach of Contract Cause of Action

Eloquence's breach of contract cause of action alleges that HCC breached the Agreement by failing to pay the two November 10, 2009 invoices. The trial court held respondents are entitled to prevail on this cause of action as a matter of law because it is time-barred. A cause of action

---

[1] Unless otherwise indicated, all further statutory references will be to the Code of Civil Procedure.

4

for breach of a written contract is subject to a four-year statute of limitations. (§ 337, subd. (a).) As a general rule, the statute of limitations begins to run "when a controversy is ripe—that is, when all of the elements of a cause of action have occurred and a suit may be maintained." (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388 (*Armstrong Petroleum*).)

Relying on the continuous accrual doctrine, respondents urge affirmance of the trial court's time-bar holding because the statute of limitations began running when the invoices came due (May 2010) and thus expired four years later (May 2014). Eloquence, on the other hand, relies on the rule of delayed commencement in contending the claim is timely because the four-year limitations period commenced when Eloquence terminated the Agreement in 2016. Accordingly, we must determine whether the continuous accrual doctrine or the delayed commencement rule applies here. We turn to the continuous accrual doctrine first.

### 1. Continuous Accrual Doctrine

Under the continuous accrual doctrine, each breach of a recurring obligation is independently actionable. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1199.) A cause of action accrues upon each new breach of such an obligation, and thus triggers a new limitations period. (*Ibid.*) The continuous accrual doctrine has been applied where performance of contractual obligations is divisible into intervals. (*Armstrong Petroleum, supra*, 116 Cal.App.4th at p. 1388.) Where divisible, a cause of action for breach of performance as to any particular interval must be brought within the period of limitations after that particular performance was due. (*Ibid.*)

Does the Agreement contemplate divisible, interval performance by HCC? To make that determination, we look to the fundamental premise of

5

contract interpretation, which is to give effect to the "mutual intention" of the parties. (*Armstrong Petroleum*, *supra*, 116 Cal.App.4th at p. 1389; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) " 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.' " (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1356.)

In *Armstrong Petroleum*, the court concluded that the words of an oil and gas operating agreement, coupled with the nature of the contract and the conduct of the parties, revealed the parties' intent to create a divisible payment obligation. Specifically, the court found that the agreement established a periodic procedure for invoicing and payment, that the nature of oil and gas production was divisible and incapable of being determined in advance, and that the parties used the monthly accounting procedure set forth in the agreement. (*Armstrong Petroleum*, *supra*, 116 Cal.App.4th at p. 388.) Like the trial court below, we find the reasoning in *Armstrong Petroleum* persuasive on the undisputed facts in the record.

First, the express terms of the Agreement required HCC to pay discrete invoices from MWI and Eloquence within 30 days. Eloquence's decision to give HCC five more months to pay the two November 10, 2009 invoices did not change HCC's obligation to pay these discrete invoices during a specified time frame.

Second, the subject matter of the Agreement for consignment required MWI and Eloquence to issue discrete invoices. The amount HCC was obligated to pay on each invoice was dependent on either the sales of a

6

particular month or the reconciliation of inventory over particular months. As in *Armstrong Petroleum*, *supra*, 116 Cal.App.4th 1375, the amount due could not be determined in advance.

Third, the parties' conduct was consistent with the provision and payment of discrete monthly invoices required by the Agreement. Despite HCC's purported failure to pay two invoices by the May 9, 2010 due date, there is no evidence showing that the unpaid $64,085 amount was ever carried onto subsequent invoices. Indeed, there is no evidence of Eloquence having ever issued a cumulative invoice for any past amount due during its eight-year relationship with HCC.

In sum, we interpret the Agreement to establish divisible, interval performance by HCC of its payment obligations. The doctrine of continuous accrual applies, and the statute of limitations expired in May 2014. Having concluded the doctrine of continuous accrual applies here, we now turn to the rule of delayed commencement.

### *2. Rule of Delayed Commencement*

The rule of delayed commencement provides that where the defendant, obligated to perform over a period of time, is guilty of material breach, the plaintiff may waive it and stand on the contract until the time for final performance. (*Israelsky v. Title Ins. Co.* (1989) 212 Cal.App.3d 611, 618.) The rule is "based largely on considerations of fairness to the nonbreaching party" as it allows that party " 'either to sue immediately or to wait till the time when the act was to be done.' " (*Ibid.*) The rule has been applied in cases where there is a "continuing duty" that has been breached, and plaintiff waits to file suit until the time for "complete performance" has passed. (*Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1078.)

7

Eloquence draws analogies to the facts of several cases to argue that the delayed commencement rule should be applied here. We are not convinced.

In *Ross v. Tambor* (1921) 53 Cal.App. 605, the parties entered into a three-year contract that required Tambor to care for bee colonies and to quadruple the number of colonies by the end of that three-year period. (*Id.* at p. 606.) Even though Tambor stopped caring for the bees during the first year, Ross waited until after the end of the three-year period to file suit. The court applied the rule of delayed commencement upon finding the contract was "a continuing executory contract, requiring of respondent continuous service over a three-year period." (*Id.* at p. 612.) The court reasoned that Tambor could have returned and resumed his work, in which case Ross would not have a breach of contract claim. (*Id.* at p. 613.) Because Ross's claim was based on Tambor's failure to perform his obligations as to the remainder of the three years, Ross could "wait until the time arrived for a complete performance on the contract" to bring an action. (*Ibid.*)

In *Trypucko v. Clark* (1983) 142 Cal.App.3d Supp. 1, the parties entered into a written lease and Trypucko provided the security deposit to Clark as required under the lease. (*Id.* at p. 3.) Clark later transferred the lease to a third party but kept the security deposit, and thus retained liability for return of the security deposit. (*Id.* at p. 6.) When the lease expired many years later, Clark refused to return the security deposit and Trypucko filed suit. (*Id.* at p. 3.) The court applied the rule of delayed commencement because Clark's performance of his obligation to return the security deposit was due upon expiration of the lease. The court explained that Trypucko did not have to treat Clark's retention of the security deposit as the "final breach"

8

because it happened before the time fixed for Clark's performance. (*Id.* at p. 7.)

Unlike *Ross* and *Trypucko*, the Agreement here does not contemplate a date for any "final" or "complete" performance of HCC's payment obligations. Instead, the Agreement expressly requires payment of each invoice within a discrete, specific time frame. Moreover, Eloquence's cause of action is not based on some continuing obligation; rather, it arises out of HCC's failure to perform its discrete and specific obligations to pay the two November 10, 2009 invoices.

Finally, Eloquence cites the unpublished federal district court decision of *Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distribs. of Evansville, LLC* (N.D. Cal. May 14, 2010, No. 10-00317 CW) 2010 U.S.Dist. Lexis 47738. In *Dreyer's*, the parties entered into a credit agreement for the distribution of ice cream products, whereby the defendants agreed to "pay all amounts due" to the plaintiff. (*Id.* at *1.) According to the subject complaint, the defendants had an outstanding balance of $233,081.21, which appeared to be the sum of amounts due on multiple invoices, although only one of those invoices fell within the limitations period. (*Ibid.*) In denying defendant ICD's motion to dismiss the breach of contract claim on statute of limitations grounds, the court applied the rule of delayed commencement in light of the complaint's allegations that all the invoices were issued pursuant to the credit agreement; that the parties had contracted for credit, not products; and that the plaintiff chose to extend credit to the defendants until the final invoice became due. (*Id.* at *3–4.) Unlike the credit agreement in *Dreyer's* that the defendants pay "all amounts due" (*id.* at *1), the terms of the Agreement here required a discrete payment amount (the amount of the invoice) within a discrete time period (30 days). Moreover, like the situation in *Armstrong*

9

*Petroleum*, the nature of the Agreement for consignment lends itself more readily to divisible payment obligations than the credit agreement in *Dreyer's*. On this record, the *Dreyer's* decision is not persuasive.

In sum, Eloquence has not shown the existence of a triable issue of material fact pertaining to the timeliness of the breach of contract cause of action.

### C. Open Book Account Cause of Action

Eloquence's second cause of action is based on the allegations that it provided consigned goods to HCC on an open book account and that HCC owes $64,085 on that account.

The term "book account" is defined by statute to mean "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." (§ 337a.) A book account is "open" where a balance remains due on the account. (*Interstate Group Administrators, Inc. v. Cravens, Dargan & Co.* (1985) 174 Cal.App.3d 700, 708.)

Relying on the general rule that an express contract is not an open book account, respondents argue summary judgment is appropriate on this cause of action because there is no evidence supporting the creation of an

10

open book account. Eloquence counters that an exception to the general rule applies here. We turn to the general rule first.

### 1. *General Rule Regarding Express Contracts*

"An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." (*Durkin v. Durkin* (1955) 133 Cal.App.2d 283, 290.) This general rule has been applied in cases where money is owed pursuant to the terms of an express contract. (E.g., *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 728 [finding plaintiff barred from asserting open book account theory to recover money owed for delivery of fire extinguishers where parties had an oral agreement]; *Tillson v. Peters* (1940) 41 Cal.App.2d 671, 679 [rejecting book account theory in suit for unpaid rent where lease specified exact installments of rent].) Here, the Agreement is an express contract that specifically defines HCC's obligation to pay the specified amount of each invoice within a specified time period, including payment of the two invoices at issue here. We thus conclude respondents have met their burden of establishing that Eloquence's open book account cause of action has no merit under this general rule. We now turn to the question of whether an exception to the general rule applies.

### 2. *Exception for Contrary Agreement*

The foregoing general rule is subject to the exception that an open book account cause of action may lie where the parties had *agreed* to treat money due under an express contract as items under an open book account. (*Parker v. Shell Oil Co.* (1946) 29 Cal.2d 503, 507.) As one court put it, under California law, "moneys due under an express contract cannot be recovered in an action on an 'open book account' in the absence of a *contrary agreement*

11

between the parties." (*Armstrong Petroleum*, *supra*, 116 Cal.App.4th at p. 1395, fn. 9, italics added.)

What constitutes a "contrary agreement" sufficient to meet the exception? Eloquence argues an express agreement is not necessary; respondents disagree. In *Warda v. Schmidt* (1956) 146 Cal.App.2d 234, the court held that "parties to a written or oral contract may, *by agreement or conduct*, provide that monies due under such contract shall be the subject of an account between them." (*Warda*, at p. 237, italics added.) Like other courts, we are persuaded by *Warda* that an express contract is unnecessary. (E.g., *H. Russell Taylor's Fire Prevention Serv., Inc., supra*, 99 Cal.App.3d at p. 728 ["A book account is created by the agreement or conduct of the parties in a commercial transaction."]) We must now ascertain whether Eloquence has shown a triable issue of fact on that point.

Eloquence identifies four documents in the record that, in its view, show agreement or conduct evidencing an open book account: (1) an "Accounts Receivable Statement" dated August 7, 2017 that lists the two unpaid invoices from 2009; (2) a "billing history" that lists all of the invoices to HCC; (3) a computer printout generated in December 2018 that lists all of the invoices to HCC; and (4) a computer printout generated in December 2018 that lists the two unpaid invoices from 2009. For the reasons below, we conclude these documents are insufficient to create a triable issue of fact.

As indicated, a book account is defined as "a detailed statement which constitutes the principal record" of transactions between the parties. (§ 337a.) Here, the monthly sales and biannual reconciliation invoices were the principal records of the parties' transactions. The four documents submitted by Eloquence listed various invoices sent to HCC, serving to track the status of the principal records, i.e., the invoices. As such, the four

12

documents were merely secondary or incidental records that do not establish a book account. "The mere recording in a book of transactions or the incidental keeping of accounts under an express contract does not of itself create a book account." (*H. Russell Taylor's Fire Prevention Serv., Inc.*, *supra*, 99 Cal.App.3d at p. 728.) Indeed, courts have explicitly rejected such "incidental keeping of accounts" as impermissible vehicles for attempting an end-run around the statute of limitations for a written contract. (*Leighton v. Forster* (2017) 8 Cal.App.5th 467, 494; *Warda*, *supra*, 146 Cal.App.2d at p. 237 ["Such memoranda cannot be utilized under the guise of a book account as a device to extend the statute of limitations beyond the time it would run on the contractual obligation."].)

Moreover, an open book account must be a detailed statement that is "entered in the regular course of business." (§ 337a.) Here, the date on the Accounts Receivable Statement indicates the document was created *almost eight years* after the invoices were issued, *more than one year* after Eloquence allegedly terminated the Agreement with HCC, and *merely one day* before Eloquence filed its complaint in this action. The "billing history" spreadsheet and the two 2018 computer printouts also appear to have been prepared for litigation. (See *Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1343 [finding a document failed the definition of a book account where it was prepared for use in opposing summary judgment motion].) None of these documents evidences an open book account kept in the regular course of Eloquence's business.

Eloquence has not shown that a triable issue exists on its open book account cause of action.[2]

---

[2] In light of this conclusion, we need not address respondents' argument that the judgment as to Eloquence's open book account cause of action should be affirmed on two alternative grounds: (1) the cause of action necessarily

13

The judgment is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

fails because the Agreement is not a credit agreement; and (2) the cause of action is time-barred because it is subject to a four-year statute of limitations.

_____
Fujisaki, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Jackson, J.


A156925

**Eloquence Corporation v. Home Consignment Center et al.**

(A156925)

Trial Court: Contra Costa County

Trial Judge: Hon. Jill C. Fannin

Attorneys:

> Monroe Law Firm and James S. Monroe for Plaintiff and
> Appellant.
>
> Gordon, Rees, Scully, Mansukhani, Jordan S. Altura, and Quyen
> Thi Le for Defendants and Respondents.